MONTGOMERY WARD & CO., INC., A CORPORATION, APPELLANT, *v.* STEVE J. STEVENS AND ANNA S. STEVENS, RESPONDENTS.

No. 3310

February 3, 1941.                    109 P.(2d) 895.

*Miles N. Pike,* for Appellant.

*L. D. Summerfield* and *A. R. Schindler,* for Respondents.

## OPINION

By the Court, DUCKER, C. J.:

This action was brought to recover damages alleged to have been sustained by plaintiffs on account of the negligent installation of an automatic oil burning stove. The parties will be referred to as in the court below.

Plaintiffs purchased an automatic oil burning stove from the defendant and shortly after its installation in their home in Sparks, oil overflowed from a tank connected with the stove running over the floor and about the furniture and furnishings, causing the damages alleged. The action was tried by the court without a jury and it was found the stove was negligently installed by the defendant through its agents and employees. Defendant has appealed from the judgment in favor of plaintiffs in the sum of $2,262.64, and from an order denying its motion for a new trial.

It is admitted by defendant that the stove was negligently installed and that damages to plaintiffs resulted therefrom. It contends, however, that it is not responsible because one Harry Blanchard, who actually installed the stove, was not acting as its servant, but was acting either as an independent contractor, or the servant of plaintiffs.

■■ We have examined the evidence with due care, There is none tending to prove that Blanchard was employed by plaintiffs. Both of them testified that they had never known or seen him before he arrived at their home to do the installing, and that they did not employ him. This is not denied.

Blanchard, who was a witness on behalf of defendant, did not testify that plaintiffs engaged him to do the installing. His arrangements for the installing were all made with a Mr. Dixon, branch manager for defendant, and he was paid for the work by it. A Mr. Wallner, appliance salesman for defendant, who made the sale, testified in its behalf, and said: "I told her if she wanted the heater installed I could suggest some one to install that heater for us that was capable of doing a good job, and that I suggested Mr. Blanchard to her * * * and I told her if she wanted this heater installed that she could either call Mr. Blanchard or let me call him, and I could send him out there to see her regarding the installation." In regard to the price for installing, he testified:: "I told her if she wished, it was purely optional whether she paid Mr. Blanchard or whether she added it to the contract and she could pay it with the heater. * * * She preferred later to adding it on to her contract and paying it on the installment plan."

Nowhere did he testify that she agreed to employ Blanchard to do the installing.

Some of the testimony given by defendant's witnesses tends to show that Blanchard was not acting as an employee of defendant in the installation of the stove. Mrs. Cowen, office manager for defendant, testified that

he "does not appear on any pay roll for Montgomery Ward at any time."

Mr. Dixon, branch manager of defendant's local store in Reno, testified that it was his duty to hire the employees of defendant and that he never hired Blanchard to work for it and that Blanchard was never paid any wages or salary by defendant. The company had an arrangement with Blanchard whereby, in the event customers bought oil heaters from the store and did not wish to do the work of installation themselves, Blanchard would be recommended. If the customer wished Blanchard's charges for the work would be added to the customer's account at the store and Blanchard paid by the company at the completion of the job when and if he presented a signed statement by the customer that the work had been completed in a satisfactory manner; that the work of installation for the plaintiffs was handled in that manner. The witness testified that he gave no instructions to Blanchard or told him how to install the stove for plaintiffs. The witness further testified that Blanchard furnished all materials required for the installation of stoves; all the tools, labor and means for transportation of the same to the place of installation.

Blanchard, who was a witness for defendant, corroborated Dixon in all respects as to said agreement. He testified that he was never employed by defendant; that he had an arrangement with Dixon with reference to oil heaters sold by defendant, to install such heaters where the customers did not do the work themselves; that he submitted in writing to Dixon a standard installation charge; that under this arrangement defendant's salesman would tell customers he could supply them with somebody to do the work and witness could go and see them. In doing the work witness furnished all materials to install the heaters, all of the tools and means of transportation for hauling same to the place of installation. Blanchard testified to considerable conversation with

plaintiffs at their home when he was installing the heater, but as none of it is inconsistent with plaintiffs' claim that he was acting for defendant, it is unnecessary to detail or summarize it. On the other hand, testimony given by plaintiffs and other circumstances in evidence furnish substantial support for the court's finding that the installation was done by defendant's agent and therefore must be accepted here. Mrs. Stevens testified that the salesman, Wallner, never suggested the name of Blanchard to her for installing the stove, but told her "that they had engineers that does that"; that she never knew or heard of Blanchard until he came to her home with his assistant, Jeffers, to install the stove; that at that time a Mr. Saxby (an employee of defendant) brought the two men into the back porch and introduced them and said they were to install the stove and were from Montgomery Wards. She testified that she did not know that Blanchard was coming down to install the stove and had no business with him at all. It further appears from her testimony that after the accident she notified defendant and Saxby came down. He said he could not fix the heater because it was not his work. She then contacted Mr. Dixon and he and Blanchard came down. Saxby then disconnected the pipes; drained the oil and they tried to clean things up as best they could. During this time Dixon said to Blanchard, "It was up to you and me and we will have to straighten this out and fix it. We will have to bring sand and put it in the cellar and then lime to take the odor out. We have to go ahead and fix up this place. You will have to go half and I will go half, and I will take so much out of your wages each week."

She testified that they (Dixon and others) sent down two carpenters who endeavored to repair the damage by putting in some new flooring; that in a controversy she had with Blanchard over an extra charge of $4 on the installation, he said: "You don't have to pay me. That will go into your contract when you pay Montgomery Ward."

■ Plaintiff Steve Stevens testified that he had never known Blanchard or Jeffers prior to their coming to the house to install the stove and had nothing to do with their employment. He corroborated his wife as to Blanchard, Jeffers and Saxby coming to their home to install the stove and as to Saxby, Dixon and Blanchard coming to the place shortly after she reported the accident to Montgomery Ward; and as to their efforts to repair the damage including their sending down carpenters and replacing flooring. After the flooring was replaced, he said Dixon came down again and looked it over and showed some anger when the witness said he was not satisfied with the work. We need not detail further circumstances in evidence which the court could rightfully consider had some tendency to establish the relation of agency between defendant and Blanchard. However, a circumstance of this character appears from the conditional sales contract under which the stove was purchased, which contains a charge for installation added to the purchase price of the heater. The weight of the explanation which defendant's witnesses gave to this was, of course, for the trial court. There is no statement in the contract that the customer was to install the stove.

■ The trial court having found on this issue in favor of plaintiffs on evidence legally sufficient to support its finding, it is immaterial whether the evidence establishes that Blanchard was an independent contractor. The plaintiffs were not bound by the agreement to that effect between Blanchard and defendant. There is no evidence tending to show that plaintiffs had any knowledge of this agreement. Plaintiffs denied any such knowledge and their evidence shows that Blanchard was held out to them as the agent of defendant. Wallner testified that he did not know what kind of a contract or arrangement Blanchard had with Montgomery Ward. From his statement: "I told her if she wanted the heater installed I would suggest some one to install that heater for us that was capable of doing the job"; and

"that they had engineers that does that," she was justified in concluding that Blanchard was to act as the agent of defendant. As counsel for plaintiffs points out, defendant recognized this agency and responsibility for it by putting in new flooring to replace some damaged by the overflowing oil.

That the interest and activity of defendant's employees in this and other respects on being informed of the accident were due solely to the desire to keep plaintiffs' good will, could have been reasonably rejected by the trial court, for the more logical deduction that they manifested a sense of responsibility.

The agreement between defendant and Blanchard had no effect in relieving it from responsibility to plaintiffs because they had been led to believe that an agency existed between the former. Jensen v. Lewis Investment Co., 39 Neb. 371, 58 N. W. 100. See Harding et ux. v. Home Investment & Sav. Co. et al., 49 Idaho 64, 286 P. 920, 297 P. 1101, where a written stipulation between the principal and apparent agent that no agency existed, was held not to be binding on one who had been led to believe that an agency existed.

■ The principle of law applicable in the situation presented here is thus stated: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." Restatement of the Law, 1 Agency, p. 590, sec. 267; 2 C. J. p. 461, sec. 70; 2 C. J. S., Agency, p. 1063, sec. 29; 2 Am. Jur. p. 86, sec. 104. We have examined the authorities cited by defendant and find that none fits the facts of this case.

■ In its judgment the court awarded the damaged building to defendant if it desired to remove it from the premises in a given time. This is assigned as error and it is contended that the court thereby granted equitable relief in an action at law. It is insisted that the

court should have found the salvage value and have deducted it from the damages awarded; that in proceeding illegally as it did it placed an undue burden on defendant. We think the court exercised a proper discretion in the method employed. The court could, it is true, have awarded damages to the plaintiffs for the value of the house less the salvage value. But the court did not do that. Damages were awarded on the basis of cost of replacement of the building as a residence, the same having been totally ruined. Having so held, it would have been inconsistent to have charged the plaintiffs with the salvage value, which would have been the effect to have ascertained it and have deducted it from the damages awarded. Defendant has not been injured and is in no position to complain on account of the salvage value, if any, having been awarded to it. Defendant was not required to take the ruined tenement. It could take it or leave it. The burden was on defendant to prove the salvage value in mitigation of damages and was not sustained.

We have examined the other assignments of error and find them to be without merit.

Judgment and order denying new trial affirmed.