GILBERT F. REID, DBA DESERT REFRIGERATION, AND CENTER AIR CONDITIONING, INC., APPELLANTS, v. ROYAL INSURANCE COMPANY, LTD., NORTH RIVER INSURANCE COMPANY, AND LILLIAN G. NORRIS, RESPONDENTS.

GILBERT F. REID, DBA DESERT REFRIGERATION, APPELLANT, v. CENTER AIR CONDITIONING, INC., RESPONDENT.

No. 4653

March 13, 1964                    390 P.2d 45

[Rehearing denied April 2, 1964]

*George A. Cromer,* of Las Vegas, for Center Air Conditioning, Inc.

*Singleton & DeLanoy* and *Rex A. Jemison,* of Las Vegas, for Gilbert F. Reid, dba Desert Refrigeration.

*Tad Porter,* of Las Vegas, for Royal Insurance Company, Ltd., North River Insurance Company, and Lillian G. Norris.

## OPINION

By the Court, BADT, C. J.:

The appeal presents two interesting legal problems. The first requires an analysis of the third-party practice rule (NRCP 14), and the other concerns the possible application of a non-contractual indemnity principle to the facts of this case. The questions arise under the following circumstances.

A home owner (Lillian Norris) and her subrogated insurance carriers (Royal Insurance Company and North River Insurance Company) joined as plaintiffs in a suit against a general contractor (Desert Refrigeration) to recover damages. The contractor had been hired to remove the existing evaporation-type air cooler and install new refrigeration equipment in the Norris home. It is claimed that the work was negligently done, causing the home to be flooded. By third-party complaint the defendant general contractor impleaded its subcontractor (Center Air), who had been engaged by the general contractor to do the work. The predicate for the claim over was that the plaintiffs' loss was due to the sole negligence of the subcontractor. An express contract of indemnity was not pleaded. Following trial, the lower court found that both the contractor (the defendant) and the subcontractor (the third-party defendant) had been negligent, the former in failing to supervise, and the latter in the manner of doing its work. It entered

judgment for the plaintiffs against the defendant *and* the third-party defendant (though the latter was never named as a defendant in the plaintiffs' case), treating them as though they had been sued jointly as tort-feasors. It also denied the general contractor (defendant and third-party plaintiff) any relief on its claim over against the subcontractor (third-party defendant).

On this appeal all agree that the plaintiffs are entitled to judgment against their defendant, the general contractor. However, the subcontractor asserts that the judgment for the plaintiffs against it cannot stand, for it was never named as a defendant in the plaintiffs' suit; and the contractor, though admitting his liability to the plaintiffs, contends that error occurred when the lower court denied his claim over against the subcontractor.

We have not heretofore had occasion to discuss the third-party practice rule.[1] It is based upon the theory of indemnity. A defendant is permitted to defend the

---

[1]NRCP 14(a), as in effect at the time the case was tried and submitted to the court below, reads:

"(a) When Defendant May Bring in Third Party. Before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. If the motion is granted and the summons and complaint are served, the person so served, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13. A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant."

case and at the same time assert his right of indemnity against the party ultimately responsible for the damage. The application of indemnity (when proper) shifts the burden of the entire loss from the defendant tort-feasor to another who should bear it instead. Prosser, Torts § 46 (2d ed.). As a general proposition the third-party practice device is *not* available in a case involving joint or concurrent tort-feasors having no legal relation to one another, and each owing a duty of care to the injured party. State v. McLaughlin, 315 S.W.2d 499, 507 (Mo. App. 1958). In such a case the plaintiff has the right to decide for himself whom he shall sue. McPherson v. Hoffman, 6 Cir., 275 F.2d 466, 470; Detroit City Gas Co. v. Syme, 6 Cir., 109 F.2d 366, 369. Rule 14 shall not be used by a defendant for the purposes of offering another defendant to the plaintiff. State v. Dinwiddie, 358 Mo. 15, 213 S.W.2d 127. However, if a new party is impleaded, it is optional with the plaintiff whether he will accept the third-party defendant as a defendant in his (the plaintiff's) case. The rule is clear in this respect. It states: "The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff * * *."

Because of these clearly defined principles, it is apparent, in the case before us, that the judgment for the plaintiffs against the third-party defendant (subcontractor) cannot stand. The plaintiffs never sought to impose a liability upon the subcontractor. Even after the subcontractor was impleaded by the named defendant (contractor) the plaintiffs did not choose to amend their complaint to accept the subcontractor as an additional defendant in their case. We can only conclude that they were satisfied with the validity of their case against the general contractor and were willing to win or lose on that claim for relief.

The lower court evidently believed that the plaintiffs' failure to accept the subcontractor as another defendant,

by filing an appropriate amended pleading, was no more than a procedural irregularity having no particular substantive significance. This is not the fact. Quite to the contrary, by treating the contractor and subcontractor as joint defendants in the plaintiffs' case, the court exposed the subcontractor to a liability which it would not otherwise incur, for in Nevada there is no right of contribution between joint tort-feasors, Gensler-Lee v. Geertson, 73 Nev. 328, 318 P.2d 1113 (and the plaintiffs may choose to satisfy their judgment by proceeding against the subcontractor whom they did not sue, instead of the contractor whom they did sue), nor, in this case (as we discuss later), is there a valid basis upon which to shift the entire loss from the contractor to its subcontractor. We therefore reverse that part of the judgment granting the plaintiffs a recovery against the subcontractor. We turn to discuss the controversy between the third-party plaintiff (contractor) and the third-party defendant (subcontractor).

As previously noted, this case does not involve an express contract of indemnity. The contractor and subcontractor did not make a written or oral agreement requiring the latter to indemnify the former against loss occasioned by the indemnitee's (contractor's) negligence. Absent an express contract case, authority is in confusion whether indemnity will be allowed at all, and if so, to what extent and under what circumstances—or, to put it differently, when is non-contractual indemnity (indemnity implied in law) permissible? It is not uncommon to recognize a right to indemnification in agency-type relationships (master-servant; principal-agent; independent contractors) if the liability is imposed upon one of the parties *solely* because of his legal relationship to the person who has committed the tortious act.

Here, the legal relationship of contractor-subcontractor is present. Had the plaintiffs' loss been caused solely by the negligence of the subcontractor we would not hesitate to apply an indemnity principle to shift the entire

burden of the loss from the contractor to the subcontractor.[2] However, this is not the case before us. For this case, the court found that both the contractor and subcontractor were negligent, and this finding is not challenged.[3] Thus, we are asked to apply the indemnity principle to a case where the parties are in pari delicto.

Reid relies upon Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 133, 76 S.Ct. 232, 100 L.Ed. 133, 142. In that case an employee of the stevedoring contractor sued the shipowner for damages for injury resulting from improper stowage of cargo aboard the ship, and the shipowner filed a third-party complaint against the stevedoring contractor. Against a dissenting opinion by Justice Black in which Chief Justice Warren and Justices Douglas and Clark joined, the five-member majority held the stevedoring contractor liable to the shipowner. The majority held that the stevedoring company's agreement to stow the pulp rolls implied an agreement to stow them properly and safely, and that this in turn implied in law an agreement to indemnify the shipowner against claim of damage if a longshoreman should be injured by reason of the negligent stowage. The majority further held that the shipowner's *failure to discover and correct* the contractor's own breach of warranty could not in such case be used as a defense, nor could it excuse the breach of the stevedoring contractor.

Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, decided two years after Ryan, referred to Ryan as holding that if the stevedoring company rendered substandard performance which led to foreseeable liability on the part of the shipowner, the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.*

In the instant case the finding of negligence on Reid's

---

[2]In such case the contractor is liable to the plaintiffs, for as to them, the duty to perform the job in a workmanlike manner is non-delegable, and he may not successfully defend the plaintiff's suit by simply asserting that he hired someone else to perform the work for him. Cf. M. W. & Co. v. Stevens, 60 Nev. 358, 109 P.2d 895.

[3]The contractor denies that it was obligated to supervise the work and denies knowledge of the danger. The trial court found against these contentions factually.

part is not necessarily confined to Reid's failure to discover and correct the danger, nor was there absent conduct on his part sufficient to preclude recovery.

Although some of the facts are in dispute, the following appears: In the process of installing the refrigeration unit it was necessary to remove the old evaporator cooler. To this evaporator cooler was attached a quarter-inch copper tube which supplied water to the old cooler. Upon removal of the evaporator cooler it was observed that water was flowing through the copper tube. Although employees of Reid, as well as employees of Center, sought to find the shutoff valve to shut off the water still coming through the copper tube, it was not found. The proper method of handling the situation was by locating the shutoff valve or stopping off the water coming into the copper pipe at its point of intake, or taking out the copper tubing entirely. The natural place to seek the intake into the copper tube and the shutoff valve would be in the neighborhood of the bathroom. Nobody found any outlets from the bathroom. It developed later, however, that the living room adjoined the bathroom and in the common wall between the living room and bathroom there was on the living room side a panel, easily removable, and which, when removed, exposed the shutoff valve in the wall. Center's employees informed one McGary, Reid's employee, who was on the job, that Center had been unable to find the shutoff valve and had crimped the copper line on the roof. It does not appear that either McGary or Reid informed Mrs. Norris of the situation. Reid had not taken out a construction permit, so there was no inspection of the job by the city authorities. When the situation became known to the city authorities, after the flooding occurred, and it developed that Reid had not obtained a construction permit from the city, Reid was fined a double penalty.

Thus the job was left. Mrs. Norris in the meantime had left Las Vegas and returned some nine days later to discover some $3,000 damage to the ceiling, walls, furniture, etc., resulting from flooding. The cause of the flooding, as might have been expected, was the exposure of

the quarter-inch copper tubing with water in it to sub-freezing temperatures. The pipe burst and the water flowed out.

Reid knew of the danger immediately upon installation and accepted it. There is ample evidence in the record upon which the trial court could rely to the effect that McGary, the agent of Reid, was definitely informed of the situation. Information to McGary was information to his employer Reid.

Appellant seeks to avoid this conclusion by the assertion that McGary was simply a salesman. He implies something of the same status to Reid himself. The trial court rejected these views. McGary was found on all of Reid's jobs. One of Center's employees when questioned on the matter of McGary's attendance on the various jobs that Center did for Reid and to what extent he was around the jobs, said it depended on how much he had to do. If he had a lot of work, he didn't show up so often, but if he had plenty of time, "He would drive you crazy." The court undoubtedly wondered why, if McGary was simply a salesman, he was around all the jobs that Center did for Reid.

As to Reid himself, he had subcontracted to Center the job of removing the old evaporator cooler and installing the refrigerator cooler. For this he paid Center $300; his full contract with Mrs. Norris was $1,426.

Another matter of importance was the duty of Reid to take out a construction permit from the proper officials of the city. The original written contract between Mrs. Norris and Reid placed on Reid the responsibility for providing "local permits and licenses."

Had there been an application for a permit, with the inspection by the city authorities that would have followed, the danger would beyond doubt have been discovered.

In short the court was justified in finding both Center and Reid negligent. Each had the same knowledge and

information. Each failed to discover the shutoff valve. Each permitted the situation to remain, namely, the quarter-inch copper pipe filled with live water exposed to freezing temperatures.

We hold that the doctrine of the Ryan case, having its origin in and being applied for the most part to maritime cases, should not be extended to the present situation. Accordingly, we hold that under the circumstances of this case, the contractor does not have a claim for relief against the subcontractor on the theory of indemnity implied in law.

The confusion as to when the indemnity rule announced in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, should be applied may be illustrated by a few citations. In Weyerhaeuser S.S. Co. v. Nacirema Co., supra, the unanimous opinion of the United States Supreme Court said: "The question here involves the right to trial by jury *under principles of maritime liability enunciated in Ryan* \* \* \*." (Emphasis supplied.) Ryan had referred to the third-party claim as growing out of the "resulting [from improper stowage by the stevedore] unseaworthiness of the vessel." The opinion of Justice Laurance M. Hyde for the Supreme Court of Missouri in McDonnell Air. Corp. v. Hartman-Hanks-Walsh P. Co., 323 S.W.2d 788 (Mo. 1959), referred to Ryan but not to Weyerhaeuser, and quoted Prosser, Torts § 46, at 251 (2d ed.), as saying: "It is difficult to state any general rule or principle as to when indemnity will be allowed and when it will not."

The Appellate Court of Illinois, in Moroni v. Intrusion-Prepakt, Incorporated, 24 Ill.App.2d 534, 165 N.E.2d 346, citing Ryan, applies the rule distinguishing between the "active and primary wrongdoer" and the one that "bears a passive relationship to the cause of the injury"—the very principle discarded by Weyerhaeuser, although the Illinois court said it was the "well settled law of this state."

The Iowa cases are not consistent. Neither are the New York cases. In 37 Iowa Law Review 517, at 536, the writers of the article entitled "Indemnity Between Negligent Tortfeasors: A Proposed Rationale," say:

"It is a good deal easier to list the cases in which indemnity has or has not been allowed than it is to make sense out of them. It is well nigh impossible to work all of the indemnity cases into a consistent whole, and the language which the courts have employed in explaining their indemnity decisions is bewildering, to say the least."

The judgment for plaintiffs against Reid is affirmed. The judgment denying Reid relief on his third-party claim against the subcontractor Center Air Conditioning, Inc., is affirmed. The judgment for the plaintiffs against Center Air Conditioning, Inc., is reversed. The respective prevailing parties shall be allowed their costs.

McNAMEE and THOMPSON, JJ., concur.