**AETNA CASUALTY AND SURETY COMPANY, a Connecticut Corporation, et al., Plaintiffs,**

v.

**JEPPESEN & COMPANY, a Colorado Corporation, Defendant.**

**Civ. No. LV–1467–PMH.**

United States District Court,
D. Nevada.

Aug. 12, 1977.

---

See also D.C., 440 F.Supp. 395.

Rex A. Jemison, Beckley, Singleton, De-Lanoy & Jemison, Las Vegas, Nev., for plaintiff Aetna Casualty & Surety Co.

Magana, Cathcart & McCarthy, Los Angeles, Cal., for plaintiff Schulze, Jemison, et al.

Dickerson & Miles, Las Vegas, Nev., Robert J. Popelka, Popelka, Allard, McCowan & Jones, San Jose, Cal., Cromer, Barker & Michaelson, Las Vegas, Nev., for defendant Jeppesen & Co.

## ORDER DENYING MOTION TO DISMISS

PEIRSON M. HALL, Senior District Judge.

The plaintiffs in the within case filed a *second* amended complaint in which there were three causes of action. The defendant filed a motion to dismiss. Thereupon the plaintiffs, conceding certain points that the defendant had made in the motion to dismiss, filed an application for permission to file a *third* amended complaint in only one count, which was *granted.* At that time it was stipulated that the points and authorities in support of the defendant's motion to dismiss the second amended complaint would apply, insofar as they were pertinent, to the plaintiff's third amended complaint which was thereafter filed.

The motion to dismiss has been extensively briefed by both parties.

The motion to dismiss is not well taken and should be and is granted in part and denied in part for reasons which are briefly set forth in the following statement.

The principal reason is that defendant's motion to dismiss misconceives the plaintiffs' position as well as the authorities upon which defendant relies.

Thus, it is important that we determine first, what it is that the plaintiffs *do not* seek by their complaint, and what their legal position *is not.* The plaintiffs concede that the Nevada statute of limitations applies; that it is two years for wrongful death; that a subrogee stands in the shoes of a subrogor and has no greater and no lesser rights than its subrogor; that the statute of limitations applies to the nature of the action rather than to the form of the complaint; that the action for hull loss is three years; and that the death cases which were settled more than four years preceding the filing of the original complaint are barred by the Nevada statute of limitations.

The defendant concedes that there is a difference between contribution and indemnity—but relies upon the principles which control contribution, not those that control indemnity.

The defendant's motion to dismiss is based upon a further wrong primary premise, i. e., that the subrogors of plaintiffs here were the plaintiffs in the wrongful death actions. This is not so. The plaintiffs here are not the subrogees of those claiming for the death of the persons killed in the airplane crash of November 15, 1964. If that were the case, then, as the plaintiffs concede, the defendant would be entitled to the motion to dismiss because the two year Nevada death statute would have run, since the payments by plaintiffs.

Plaintiffs here are the *subrogees of the defendant in the wrongful death case,* namely, *Bonanza Airlines,* plaintiffs' subrogors. The plaintiffs here are in the position of *Wharton* in the principal case upon which defendant relies. *State Farm v. Wharton* (1972), 88 Nev. 183, 495 P.2d 359.

The facts in *State Farm v. Wharton* sharply point up the error of defendant. In *State Farm* one Fair was insured by State Farm; Fair and his three passengers were injured in an automobile accident and collected from State Farm under a written contract of insurance covering him and his passengers for injuries received as a result of a collision with *Wharton.* State Farm as the *subrogee* of Fair (*not* the subrogee of Wharton) and his three passengers *sued Wharton.* Thus, State Farm stood in the shoes of the subrogor, its insured, and was subject to all of the same limitations and entitled to the same rights only as its subrogor as of the date of the injuries to its subrogor in the collision with the Wharton vehicle. Bonanza in the instant case is in the similar position of Wharton in the *State Farm* case. The injured plaintiffs in the *State Farm* case claimed the fault was Wharton's. In the instant case decedents' heirs claimed the fault was Bonanza's, moreover, the *liability* of State Farm was *liquidated,* i. e., fixed by contract, whereas Bonanza's liability could *not* be liquidated, i. e., fixed until it was proved or admitted that (1) it did not exercise the highest degree of care, and (2) such failure was *a* proximate cause of the crash of November 15, 1964. Bonanza made no such admission by the settlements. It alleges it paid in good faith fear of the application of the doctrine of *res ipsa loquitur.*

In *Hartford v. Statewide* (1972), 87 Nev. 195, 484 P.2d 569, the subrogor likewise was the injured party who was paid by his insurance company for home damages; as in *State Farm* the subrogor was the injured party. The court pointed out that the suit by the subrogor of the injured party was for injury to property; and that a Nevada statute specifically set the limitations for damage to property. In *Walz v. Hood* (1971), 87 Nev. 319, 487 P.2d 344, a passenger injured in a taxi cab sought to apply the Nevada limitation statute providing for four years on a contract of carriage, instead of the two year statute for personal injury. The court, on the authority of *Hartford,* held that the two year statute specifically governed the subrogee of the injured person.

In *Reid v. Royal Insurance Co.* (1964), 80 Nev. 137, 390 P.2d 45, the insured homeowner and her insurance carriers, who paid her, joined as plaintiffs and sued the general contractor to recover damages for faulty construction work, claiming negligence. The general contractor impleaded its subcontractor who was engaged by the general contractor to do the actual work. There again the subrogor was the *injured party,* repaid as in *State Farm, Hartford* and *Walz* by its insurance carrier under a contract with a definite liquidated liability to pay the injured person. Bonanza had no such contract, only a contract to exercise the "highest duty of care," which is the controlling factor for liability in a common carrier death case. Furthermore, the claim was for contribution and *not for indemnity, as here.* And, in the *Reid* case, the Court laid down the proposition that "*if plaintiffs' loss had been caused solely by the negligence of the subcontractor 'we would not hesitate to imply an indemnity principle to shift the entire burden of the loss from the contractor to the subcontractor.'* "; that is plaintiffs' claim here.

*State Farm v. Clark County* (Clark County 1974) is likewise not applicable, because,

as in *Wharton, Hartford, Walz* and *Reid,* the subrogee's right flowed by contract to it from the injured plaintiff—and as in *Reid* indemnity was disallowed because the parties were in *pari delicto.* Nor does the *Reid* case weaken the authority of *United Air Lines v. Weiner* (1964) 335 F.2d 379 which held that both contribution and indemnity are creatures of equity; and (p. 398) that the carrier there, had "only an imputed or vicarious liability because of special relationship with the actual wrongdoer but is not personally at fault; . . . where the indemnitor [The U.S. in Weiner–Jeppesen here] has the duty to maintain safe premises, defects in which the indemnitee failed to correct or discover; or where the indemnitor is a supplier of goods." In *Weiner* the trial court held both United Air Lines and the U.S. were negligent and that neither was entitled to contribution or indemnity. The author of this memorandum tried that case and one of the principal reasons for the holding of fault of United Air Lines was *their failure to discover the danger* of the "tear drop" pattern of descent of the government planes across the airway to which the air line was confined by government regulations and government controllers.[1]

Jeppesen supplied the charts here. Bonanza relied on them to its loss.

■ The defendant's position is not well taken that the statute of limitations began to run upon the date of the crash November 15, 1964, or the date of the expiration of the two year death statute, viz., November 15, 1966. The latter is not correct because the plaintiffs here are not the subrogees of the decedents or their heirs—as stated several times before herein—the subrogors of the plaintiffs here is Bonanza, the air line alleged tort feasor.

The former date, November 15, 1974, is not correct as is almost universally declared by numerous decisions cited in plaintiffs' brief, and collected in 20 A.L.R.2d 925.

Moreover, plain logic is against both positions for the simple reason that, in many instances, a defendant in a death or personal injury case would not be held liable or be in the "unavoidable shadow of liability" created by the doctrine of *res ipsa loquitur* against the plaintiffs' subrogors.

Next, the defendants claim that the policy was a "liability policy" rather than an "indemnity policy." Whichever one it was (and the determination need not now be made) subrogation for indemnity does not arise until payment, i. e., until the loss is a final fact by payment.

■ The authorities overwhelmingly support the conclusion that the Nevada four-year statute governs this case.

Thus, all payments of death cases made more than four years prior to bringing the within action, as well as the payment of the hull loss, are barred by the Nevada four-year statute. And the plaintiffs so concede, and

IT IS SO ORDERED:

The motion to dismiss all the other items claimed is overruled and inasmuch as defendants have answered there appears to be no necessity for fixing a time to answer.

---

1. Reversed by Circuit which held the U.S. alone was liable, which entitled the carrier to indemnity.