MEDALLION DEVELOPMENT, INC., a Nevada Corporation, Appellant, *v.* CONVERSE CONSULTANTS; CONVERSE CONSULTANTS SOUTHWEST, INC.; KENNEDY, JENKS & CHILTON; and BAUGHMAN & TURNER, Respondents.

No. 26870

January 3, 1997                    930 P.2d 115

[Rehearing denied March 6, 1997]

*Beckley, Singleton, Jemison & List,* and *Daniel F. Polsenberg,* Las Vegas, for Appellant.

*Dennis R. Haney & Associates,* and *Philip J. Dabney,* Las Vegas, for Respondents Converse Consultants and Converse Consultants Southwest, Inc.

*Hale, Lane, Peek, Dennison & Howard,* and *Donald L. Christensen,* Las Vegas, for Respondent Kennedy Jenks & Chilton.

*Kravitz, Schnitzer & Sloane,* Las Vegas, for Respondent Baughman & Turner.

*Gerard, Selden & Associates,* Las Vegas, for Amicus Curiae Duck Creek Village.

## OPINION

*Per Curiam:*

This appeal arises from a complex construction-defect case involving the Duck Creek Village condominium complex in Las Vegas, Nevada. Appellant Medallion Development, Inc. ("Medallion") was the developer/general contractor for Duck Creek Village.

Respondent Converse Consultants and Converse Environmental Consultants Southwest, Inc. (collectively referred to as "Converse"), a soils engineering firm, performed various pre-construction soil tests, recommended the grading and design of building pads, and inspected the concrete pouring of a number of building pads and foundations at Duck Creek Village. Respondent Baughman & Turner ("B&T"), an engineering firm, prepared the original hydrology report for the development. Respondent Kennedy, Jenks & Chilton ("KJC"), also an engineering firm, updated the hydrology reports prepared by B&T and prepared certain water and sewer plans.[1]

In May 1990, the Duck Creek Village I and II Homeowners Association ("Homeowners Association") brought this action against Medallion for negligence, nuisance, strict liability, breach of warranty, negligent misrepresentation, negligent failure to disclose, fraud, conversion, breach of contract and rescission. The Homeowners Association alleged several specific defects in the construction of Duck Creek Village, including poor construc-

---

[1]Converse, B&T and KJC are collectively referred to as "respondents."

tion of artificial fill soils, improper design and construction of roofs, improper drainage, improperly installed electrical systems, improperly installed sewer systems, and improper design and construction of walls. In October 1992, the Homeowners Association amended its complaint to include Converse, B&T, and KJC.

As co-defendants, Medallion and respondents filed cross-claims against each other, seeking indemnity and contribution. Because, Medallion's contracts with respondents contain no express indemnification provisions, Medallion's "indemnity" cross-claims against Converse, KJC and B&T sounded exclusively in implied contractual (equitable) indemnity, not contractual indemnity.

In August 1994, plaintiff Homeowners Association settled its claims against respondents. The settlement was for a combined $75,000: $25,000 from each of the respondents. The Homeowners Association filed a motion in district court to find "that the proposed settlement is in good faith" pursuant to NRS 17.245. The Homeowners Association represented that respondents "were partially responsible for certain construction defects, namely drainage and pavement problems and some foundation cracking." It asserted that this settlement would provide funds to begin repairing its damaged property. On October 18, 1994, the district court orally granted the motion for approval of the good faith settlement.

In December 1994, Converse filed a motion to dismiss Medallion's indemnity claims or for summary judgment. Converse asserted that the determination that the settlement was in good faith extinguished any remaining equitable indemnity claims. In addition, Converse asserted that no factual basis existed to impose equitable indemnity. KJC and B&T joined in the motion.

On January 4, 1995, the district court granted the motion to dismiss, ruling that the determination of the good faith of the settlement barred any further claims against Converse. It found "that no equitable or factual circumstances warrant or justify allowing Medallion to pursue its equitable indemnification claims against the Converse Defendants in light of this Court's previous Order Approving the Good Faith Settlement entered into between the Converse Defendants and the Plaintiff." Thereafter, the district court entered an order dismissing Converse, KJC, and B&T from the lawsuit with prejudice and entering summary judgment against Medallion on all of its claims against respondents.

On January 11, 1995, Medallion moved to amend the district court's orders and for relief from judgment. Medallion argued that because the Homeowners Association's settlement with the subcontractors did not resolve the association's claims against

Medallion for the damages allegedly caused by the subcontractors, the settlement should not extinguish Medallion's indemnity rights. The district court denied the motion.

In February 1995, the Homeowners Association entered into a global settlement with Medallion for $1,200,000. The settlement allocated values to each aspect of the Homeowners Association's claims for construction defects based on estimates from experts for both Medallion and the Homeowners Association.

On appeal, Medallion contends that the district court erred in granting summary judgment on its claims against respondents because respondents' good-faith settlement with the plaintiff does not resolve its claims for implied contractual (equitable) indemnity.

## DISCUSSION

Appellant Medallion contends that the district court erred in dismissing its indemnity claims against respondents. Medallion asserts that a good-faith settlement bars contribution, but does not bar indemnity claims against the settling tortfeasor. Medallion argues that it stated a claim for equitable indemnity against respondents because it had a ''special relationship'' with respondents.

Summary judgment is only appropriate when, after a review of the record viewed in the light most favorable to the non-moving party, there remain no issues of material fact. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). ''In determining whether summary judgment is proper, the non-moving party is entitled to have the evidence and all reasonable inferences accepted as true.'' Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989). This court's review of a summary judgment order is *de novo*. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989). We are ''required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment.'' Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981). A party opposing summary judgment may not rely on his allegations to raise a material issue of fact where the moving party supports his motion with competent evidence. Garvey v. Clark County, 91 Nev. 127, 130, 532 P.2d 269, 271 (1975).

In the instant case, the district court approved the settlement between the Homeowners Association and respondents as in good faith pursuant to NRS 17.245, which states in pertinent part:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

. . .

    2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

This statute was enacted in 1973 as part of the Uniform Contribution Among Tortfeasors Act, NRS 17.225 et seq., which recognizes the right of joint tortfeasors to seek an equitable distribution of liability among them. NRS 17.245 provides that when a good-faith settlement is reached between one of several tortfeasors and the injured party, it discharges the settling tortfeasor from all liability for contribution to the non-settling tortfeasors, but does not discharge any of the non-settling tortfeasors from liability.

NRS 17.245 does not address the effect of a settlement on an indemnity claim between tortfeasors. However, NRS 17.265 makes clear that the right of indemnity remains unimpaired:

> NRS 17.225 to NRS 17.305, inclusive, do not impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

This statute declares that a good-faith settlement under NRS 17.245 does not impair any right of indemnity, provided that the right of the obligee "is for indemnity and not contribution." NRS 17.265.

*Black's Law Dictionary* defines contribution as the "[r]ight of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear." *Black's Law Dictionary* 326 (6th ed. 1991). It further states that "[u]nder [the] principle of 'contribution,' a tort-feasor against whom a judgment is rendered is entitled to recover proportional shares of judgment from other joint tort-feasors whose negligence contributed to the injury and who were also liable to the plaintiff." *Id.* (citing Dawson v. Contractors Transport Corp., 467 F.2d 727, 729 (D.C. Cir. 1972)). *Black's* defines indemnity, on the other hand, as "[r]eimbursement [or] [a]n undertaking whereby one agrees to indemnify another upon the occurrence of an anticipated loss. A contractual or equitable right under which the entire loss is shifted from a tortfeasor who is only technically or passively at fault to another who is primarily or actively responsible." *Id.* at 769 (citations omitted). Thus, there is a clear distinction between contribution and indemnity: the former is an equitable sharing of liability while the latter is a complete shifting of liability to the party primarily responsible.

We also note the existence of two types of indemnity: contractual and equitable. Contractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work. *See, e.g.,* Continental Casualty Co. v. Farnow, 79 Nev. 428, 386 P.2d 90 (1963). On the other hand, equitable indemnity is a judicially-created construct to avoid unjust enrichment. *See* Piedmont Equip. Co. v. Eberhard Mfg., 99 Nev. 523, 528, 665 P.2d 256, 259 (1983). In the instant case, Medallion argues that it is entitled to equitable, not contractual, indemnity from respondents.

This court has developed a line of cases addressing equitable indemnity. *See id.;* Black & Decker v. Essex Group, 105 Nev. 344, 775 P.2d 698 (1989); Reid v. Royal Insurance Co., 80 Nev. 137, 390 P.2d 45 (1964).

We have previously held that equitable indemnity is not applicable where the tortfeasors were *in pari delicto, i.e.,* equally responsible for the loss. *Reid,* 80 Nev. at 146, 390 P.2d at 48. The *Reid* court determined that because the subcontractor and general contractor both bore equal liability for the injury, "the contractor does not have a claim for relief against the subcontractor on the theory of indemnity applied in law." *Id.* at 146, 390 P.2d at 49. However, this court also noted that so long as a legal relationship such as contractor-subcontractor is present, "[h]ad the plaintiffs' loss been caused solely by the negligence of the subcontractor[,] we would not hesitate to apply an indemnity principle to shift the entire burden of the loss from the contractor to the subcontractor." *Id.* at 142-43, 390 P.2d at 48.

In *Piedmont,* we explained that restitution forms the basis for implied indemnity and that indemnity is only available "so long as the indemnitee is free from active wrongdoing regarding the injury to the plaintiff." *Piedmont,* 99 Nev. at 527-28, 665 P.2d at 259. Evidence supporting only passive negligence, breach of implied warranty or strict liability is insufficient to establish active wrongdoing. *Id.*

In *Black & Decker,* this court further addressed equitable indemnity. In deciding that Black & Decker was entitled to full indemnity from Essex Group, this court stated:

> "The right of indemnity rests upon a difference between the primary [active] and the secondary [passive] liability of two persons, each of whom is made responsible by the law to an injured party." Tromza v. Tecumseh Products Co., 378 F.2d 601, 605 (3rd Cir. 1967) (citation omitted). The difference between primary and secondary liability depends on a differ-

ence in the character or kind of wrongs that cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. *Id.*

105 Nev. at 345, 775 P.2d at 699.

The principles elucidated by this court in our aforementioned decisions are equally applicable in the context of implied contractual indemnity. Accordingly, consistent with prior case law and NRS 17.245, we now hold that tortfeasors may bring claims of implied contractual (equitable) indemnity against one another where a good-faith settlement has been reached between the injured plaintiffs and one or more of the tortfeasors.[2] This holding stresses accountability and fairness among tortfeasors. Active wrongdoers should bear the consequences of their injurious actions. Far from discouraging global settlement, this authorization of implied contractual indemnity claims between settling and nonsettling tortfeasors works to ensure that co-defendants do not avoid significant liability to one another where there are widely disparate degrees of fault.[3]

We also note, however, that NRS 17.245 makes clear that a good-faith settlement entered into by one tortfeasor prevents all others from bringing claims for contribution against that settling tortfeasor. Consequently, defendants relying upon implied contractual indemnity claims must meet the legal standards outlined in our previous decisions addressing indemnity. *See, e.g., Black & Decker,* 105 Nev. at 344, 775 P.2d at 698; *Piedmont Equip. Co.,* 99 Nev. at 523, 665 P.2d at 256; *Reid,* 80 Nev. at 137, 390 P.2d at 45.

Our review of the record in the instant matter reveals that summary judgment was prematurely granted. The record shows that material issues of fact do exist. Medallion's expert, Donald Seppa, has averred that, after his review of respondents' evidence, Converse, B&T, and KJC were responsible for the devel-

---

[2]We do not address the issue of whether implied contractual indemnity is available where the defendant tortfeasors have expressly contracted with respect to the duty to indemnify. In the instant matter, it appears that no express indemnification clause was contained in any of Medallion's contracts with respondents.

[3]We decline to follow Vertecs Corp. v. Reichhold Chemicals, Inc., 661 P.2d 619 (Alaska 1983), in which the Supreme Court of Alaska rejected the doctrine of equitable indemnity. We also note that the holding in that case has been modified by statute and subsequent case law. *See* Benner v. Wichman, 874 P.2d 949 (Alaska 1994).

opment's construction defects and that Medallion "was not negligent in any manner." Indeed, respondents' "preliminary allocation matrix," though it did not specifically determine the involvement of the respondent "design professionals," indicates that soil conditions, paving, site drainage, and foundation defects alleged by the Homeowners Association may have been primarily caused by respondents.

Reports prepared by the respondents for Medallion also appear to confirm that all three respondents may have given improper recommendations in many of their design specifications. Specifically, the evidence shows that Converse may have been responsible for improper pavement design and failure to require a corrosion inhibitor to protect the copper water pipes from deterioration. KJC and B&T may have been responsible for failing to adequately protect the pipes and failure to provide sufficient pavement drainage. This is sufficient to show that respondents may be primarily liable for the construction defects in the Duck Creek subdivision.

On remand, Medallion will have to show that one or more of the subcontractors is primarily liable on one or more of the claims brought by the Homeowners Association. *See Black & Decker,* 105 Nev. at 344, 775 P.2d at 698. After a thorough examination of all the evidence, the fact finder may determine that the defendants are, in whole or in part, equally responsible for each of the claims. In that instance, implied contractual indemnity would be inapplicable. However, until all meaningful evidence is fleshed out and liability determined, material issues of fact still exist. Accordingly, we reverse the order of the district court and remand this case to the district court for proceedings consistent with this opinion.