GEORGE L. BROWN INSURANCE AGENCY, INC., A NEVADA CORPORATION; AND TERRI ALSOP, AN INDIVIDUAL, APPELLANTS, *v.* STAR INSURANCE COMPANY, A MICHIGAN CORPORATION; MEADOWBROOK, INC., A MICHIGAN CORPORATION; AND MEADOWBROOK OF NEVADA, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 50741

August 12, 2010                                          237 P.3d 92

*Snell & Wilmer LLP* and *John S. Delikanakis*, Las Vegas, and *Matthew L. Lalli* and *Troy L. Booher*, Salt Lake City, Utah, for Appellants.

. *Laxalt & Nomura, Ltd.*, and *James E. Murphy*, Las Vegas; *Berman, Berman & Berman, LLP*, and *William M. Aitken*, Los Angeles, California, for Respondents.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we consider what approach Nevada should adopt in interpreting indemnity provisions in insurance contracts when an indemnitee seeks to be indemnified on claims arising out of the indemnitee's own negligence. We conclude that Nevada should adopt the majority rule regarding indemnification; therefore, the contract must expressly or explicitly reference the indemnitee's own negligence before an indemnitee may be indemnified for his or her own negligence. Consequently, we conclude that the district court erred in granting summary judgment in favor of respondents Star Insurance Company, Meadowbrook, Inc., and Meadowbrook of Nevada, Inc. (collectively, Star), because there are genuine issues of material fact concerning fault that must be decided before the indemnification clause at issue here may be enforced.[1]

---

[1]We do not reach the other issues appellants raise as they are resolved by our reversal and remand.

## FACTS

### The parties and their relationship

Appellant George L. Brown Insurance Agency, Inc., is an independent insurance agency that contracts to sell insurance policies for various insurance carriers, including Star Insurance Company. In exchange for selling Star's insurance policies, Brown receives a commission.

Brown and Star's contract (Producer Agreement) contains an indemnification provision, which requires Brown to indemnify Star for losses arising from Brown's performance under the contract. The provision states that:

> [Brown] shall defend, indemnify and hold harmless [Star] for any and all damages, losses, liabilities, fines, penalties, costs, and all other expenses reasonably incurred by [Star] including reasonable attorneys fees, for liabilities imposed upon [Star] in connection with or arising out of any claim, suit, hearing, action or proceeding, or threat thereof in which [Star] is involved by reason of [Brown] having performed services for [Star] under this Agreement, or having failed to perform services required under this Agreement.

The contract also requires that Brown receive prompt notice of any claim, suit, hearing, action, or proceeding to invoke the indemnification provision.

### Disputed insurance policy

James Seeley is the sole owner of JBC Drywall, Inc. In September 1998, Seeley incorporated JBC in California, where the company established its principal place of business and cities of licensure. JBC employee Oscar Shatswell resided in La Mirada, California, and was employed to transport materials for JBC. Although Shatswell left his JBC truck in Las Vegas an average of one day per week, Shatswell's work for JBC was predominately in California.

In February 2000, Seeley began moving JBC's operations from California to Las Vegas, Nevada. That same month, Seeley contacted Terri Alsop, Brown's agent, to obtain workers' compensation insurance for JBC's employees. However, Alsop advised JBC that his workers' compensation insurance would only cover employees that lived and worked in Nevada. Seeley informed her that would not be an issue because if he kept any of his California employees, they would be moving to Nevada. He further stated that his employees would only be traveling into California occasionally for business.

In April 2000, Seeley personally moved to Henderson, Nevada, where he began to operate JBC from his home. Although JBC con-

ducted business in Nevada, it was still incorporated in California and continued some of its operations in California. Additionally, JBC continued to employ individuals who lived and worked in California, including Shatswell, who remained a resident of California after JBC's move. In May 2000, Alsop completed a workers' compensation insurance application on behalf of JBC. Alsop testified that everything she was told about JBC's operations was contained in the narrative portion of the application. The narrative portion of the application described JBC's operations as follows:

> [I]nsured trucks drywall from the Mfg to job sites. He has employees of the job site who drive Grade All and lifts the drywall into the buildings (no more than 2 stories). He pick ups drywall from 3 mfg [sic] in Las Vegas (95% of his business) and one Mfg in La Mirada, California (5% one truck once a week).[2]

In August 2000, Alsop notified JBC that she had secured insurance in accordance with his requests through Star Insurance. Alsop testified that she informed Seeley both orally and in writing that the workers' compensation policy would only cover ''those of his employees that live or are a resident in Nevada.'' In Alsop's letter to Seeley, she stated:

> I have secured a quote from Star Insurance Company which is enclosed for your review. The annual premium is $16,897. This quote is based on three employees at $36,000 each annual payroll who are employed and live in Nevada. I have requested an All State Endorsement be added to your policy. This will cover your employees who are employed in Nevada but are temporarily working in another state.

The policy, which was effective August 2, 2000, included coverage for JBC's employees for bodily injury by accident and promised coverage in other states; California was not specifically excluded.

Gary Cooper, senior program director and underwriter of Meadowbrook Insurance Company and Star, testified that he never saw JBC's application. However, Alsop testified that she advised Cooper in May 2000 that JBC had moved or was moving to Nevada from California. Cooper only remembered Alsop informing him that JBC was no longer in California. Cooper's understanding was that JBC was solely a ''Nevada risk,'' meaning JBC only did business in and worked in Nevada. He further testified that at the time JBC purchased the policy, he told Alsop that he ''was not interested in writing a California account'' and that he ''made it very clear to [Alsop].'' He explained that Star's system

---

[2]We understand ''Mfg'' to mean manufacturer or manufacturing site.

only allowed Nevada policies to be written because one could only designate Nevada payroll and class codes in the Internet system Alsop used to write the policy.

### Accident in California and arbitration

On September 6, 2000, while transporting materials in California for JBC, Shatswell was injured in an accident. Shatswell and JBC made a claim under the Star policy. However, Star denied coverage stating that the policy only insured JBC's employees and operations in Nevada, not in California.

In December 2000, Seeley and JBC commenced litigation in California regarding Shatswell's workers' compensation claim. The California Workers' Compensation Board referred the issue of insurance coverage to an arbitrator with the California Workers' Compensation Appeals Board. The California arbitrator ruled that the policy covered Shatswell's injury in California. The arbitrator stated that "the insurance policy which ultimately issued to Seeley and JBC does not expressly limit the terms of its coverage to Nevada operations." This conclusion was predicated on the "Other States Coverage" provision on the first page of the policy, which stated that the policy applied to all states except five that were expressly listed on the policy. California was not among the expressly excluded states in the policy. Thus, the arbitrator ruled that JBC is "covered for an injury involving work in 'other states.'"

Moreover, the arbitrator ruled that Star had "actual and constructive knowledge of the fact that [JBC] had an on-going business operation within the State of California." The arbitrator based this conclusion on Alsop's knowledge of JBC's business operations in California, which the arbitrator appeared to impute to Star based on Star's relationship with Alsop. In fact, the arbitrator stated that Alsop was "speaking on behalf of the insurance company."

After the arbitrator's ruling, the California Court of Appeals and the California Supreme Court upheld the decision, which stated that Star was required under JBC's policy to provide coverage for Shatswell's injuries. Star is currently paying the insurance benefits to Shatswell under the policy.

### Procedural history of this case

After the California arbitration, JBC initiated this lawsuit by filing a complaint against both Star and Brown in Nevada.[3] Subse-

---

[3]After prevailing on their workers' compensation claim in California, Seeley and JBC brought claims against Brown and Alsop for professional negligence and against Star for breach of insurance contract, breach of duty of good faith and fair dealing, and breach of statutory duties. Seeley and JBC's claims

quently, Star filed an amended answer to the complaint and filed a cross-claim for indemnity against Brown and Alsop. Specifically, Star sought contractual indemnification for defending this lawsuit against JBC, defending the California arbitration against Shatswell's claims, and past and future payments made to Shatswell under the JBC insurance policy.

Star filed a motion for summary judgment against Brown and Alsop on the contractual indemnification claims, seeking to recover the payments it made to Shatswell and any other liability it has in connection with JBC's complaint, by invoking the indemnity provision. Specifically, Star sought

> (1) indemnity from Brown and Alsop in the event it is found liable to JBC on the complaint; (2) indemnity from Brown and Alsop for all sums which Star has paid or will pay to JBC's injured employee; and (3) the fees and costs Star has incurred in the various litigation arising from the claims of JBC and its employee.

Based on the indemnification clause, the district court entered summary judgment in favor of Star. Brown and Alsop now appeal.

## DISCUSSION

Brown argues that the district court erred when it granted Star's motion for summary judgment. Brown contends that the district court erred when it interpreted the indemnification provision as requiring Brown to indemnify Star's negligence in the absence of express language that includes indemnity for the indemnitee's own negligence. We agree. Where the indemnification clause does not specifically and expressly include indemnity for the indemnitee's own negligence, an indemnification clause "for any and all liability" will not indemnify the indemnitee's own negligence. Because we conclude that indemnification only applies when the indemnitee is not negligent, in the absence of explicit and express contractual language to the contrary, summary judgment was not appropriate in this case.

### Standard of review

"This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is

---

were dismissed on various motions unrelated to the issues in this appeal in February 2005, and only the claims between Brown, Alsop, and Star remain.

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* An issue of material fact is genuine when the evidence is such that a rational jury could return a verdict in favor of the nonmoving party. *Id.* at 731, 121 P.3d at 1031.

*Contractual indemnity based on the indemnitee's negligence*

"Contractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work." *Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 33, 930 P.2d 115, 119 (1997), *superseded by statute as stated in Doctors Company v. Vincent*, 120 Nev. 644, 654, 98 P.3d 681, 688 (2004). The scope of a contractual indemnity clause is determined by the contract and is generally interpreted like any contract. *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 532 P.2d 97, 104 (Cal. 1975).

An indemnitor's contractual obligation to indemnify its indemnitee for the indemnitee's own negligence is a matter of first impression in Nevada. The United States District Court for the District of Nevada dealt with interpretation of an express contractual indemnity agreement in *Aetna Casualty and Surety Co. v. L.K. Comstock & Co.*, 488 F. Supp. 732 (D. Nev. 1980), *rev'd on other grounds*, 684 F.2d 1267 (9th Cir. 1982). The *Aetna* court, in the absence of controlling Nevada precedent, noted that while "[t]he traditional majority position is that strict construction should be applied to such indemnity contracts so that express or explicit reference to the indemnitee's own negligence is required," *id.* at 740, the court assumed "that Nevada would follow the modern minority rule because it is the more enlightened view." *Id.* at 742. "The modern minority rule is that an indemnity provision 'for any and all liability' means *all* liability, including that arising from the indemnitee's concurrent negligence." *Id.*

The rationale behind "the minority view is that such indemnity contracts are so common in the modern business world that courts should leave the parties with their bargain for 'any and all liability.'" *Id.* (citing *Martin v. Maintenance Co., Inc.*, 588 F.2d 355 (2d Cir. 1978); *Jacksonville Terminal Co. v. Railway Express Agency, Inc.*, 296 F.2d 256, 262 (5th Cir. 1961)). Applying the minority rule, the *Aetna* court held that the fact that the indemnitee was concurrently negligent was immaterial, and the indemnitor was bound by its contract to indemnify the indemnitee in full. *Id.* at 742. We find this rationale unpersuasive.

In this case, it appears the district court applied the minority view in granting summary judgment in favor of Star in finding that the indemnification provision of the Producer Agreement was

"clear and unambiguous . . . [and] entitled to be enforced by the court."

We reject the rationale of the so-called minority rule because a general clause is not sufficient to impose such an extraordinary remedy. Instead, we adopt the majority rule—an express or explicit reference to the indemnitee's own negligence is required to indemnify an indemnitee for his or her own negligence—because "the character of [such an] indemnity [is] so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation, and no inference from words of general import can establish it." 41 Am. Jur. 2d *Indemnity* § 16 (2005).

Consistent with the majority rule, "contracts purporting to indemnify a party against its own negligence will only be enforced if they clearly express such an intent and a general provision indemnifying the indemnitee 'against any and all claims,' standing alone, is not sufficient." *Camp, Dresser & McKee v. Paul N. Howard*, 853 So. 2d 1072, 1077 (Fla. Dist. Ct. App. 2003) (internal citations omitted); *see also* 41 Am. Jur. 2d *Indemnity* § 18 (2005). "[A] contract of indemnity will not be construed to indemnify a party against loss or damage resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." *Economy Forms v. J.S. Alberici Constr.*, 53 S.W.3d 552, 554 (Mo. Ct. App. 2000). Unlike the modern minority rule, the majority rule provides clarity and fairness to the parties involved. Under the majority rule, the wrongdoer faces the consequences of his or her actions rather than "cast[ing] the burden of negligent actions upon those who were not actually at fault." *United States v. Seckinger*, 397 U.S. 203, 212 (1970). Thus, the modern minority rule allows for too much to be read into the terms of a contract that the parties may not have intended and could substantially benefit one party to the extreme detriment of the other.

Adopting the majority rule is also consistent with our recognition of the express negligence doctrine, which "provides that a party demanding indemnity from the consequences of its own negligence must express that intent in specific terms." *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 559-60 (Tex. App. 2002). "[T]he purpose of the express negligence doctrine [is] to prevent surprise to the indemnitor." *Id.* at 560. "Under the doctrine of express negligence, the intent of the parties must be specifically stated within

the four corners of the contract." *Id.* Further, indemnification "provisions are strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal terms." *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003) ("[W]e are mindful that to obligate one party for the negligence of another is a harsh burden that a party would not lightly accept.").

The indemnification provision of the Producer Agreement states, "[Brown] shall defend, indemnify and hold harmless [Star] for any and all damages, losses, liabilities, fines, penalties, costs, and all other expenses reasonably incurred by [Star] . . . ." There is no express or explicit reference to negligence and this general provision is not sufficient to indemnify Star against its own (possible) negligence. Because the indemnification clause does not cover Star's own negligence, the district court's grant of summary judgment is improper because it must first be determined whether Star was negligent before enforcement of the indemnification clause is appropriate.

Here, the district court did not make a finding of negligence, instead stating "[t]hat, as a matter of law, Star is not required to prove, as part of its prima facie claim for contractual indemnity, that it was not negligent" and "[t]hat the issue of negligence is speculative." We disagree and conclude that the district court must make a finding of whether Star was negligent before it can determine the applicability of the indemnification clause. Therefore, summary judgment was not appropriate in this case, as genuine issues of material fact remain concerning Star's fault that must be decided before the indemnification clause at issue here may be enforced.

Accordingly, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

HARDESTY, J., concurs.

PICKERING, J., concurring:

While I concur in the decision to reverse summary judgment and remand for further proceedings in this case, I do so because I find an issue of fact as to whether Star issued the problematic insurance policy "by reason of [Brown] having performed services for [Star] under this Agreement," as the indemnity clause in the Producer Agreement requires. This conclusion depends on reading the indemnity clause as applying only when Brown's acts or omissions caused Star to incur liability it could not avoid and would not have

incurred otherwise. I read the clause this way not because Star seeks indemnity for negligence—I don't see that it does—but based on ordinary rules of contract construction.

As noted, I do not see this case as involving a question of indemnity for negligence. The party seeking indemnification, Star, was held contractually liable on a policy of insurance that Brown, acting as Star's producing agent, originated. Star now seeks contractual indemnity from Brown. There is no claim that Star was negligent toward the insured or toward Brown; hence, there is no question of Star being indemnified by Brown for Star's negligence. At most, Star seeks indemnity for having issued a policy it wouldn't have if Brown had provided complete information about the prospective insured's business on the application Brown forwarded. Brown and Star disagree on whether Star knew what Brown knew (or should have known) about the insured when Star issued the policy.

The Producer Agreement defined the insurance risks Star authorized Brown to solicit and submit. If Brown exceeded the scope of its authority in taking this partly California-based insured's application and forwarding it to Star as unexceptionable, then Brown may be liable to Star as a matter of agency law, Restatement (Third) of Agency § 8.09 cmt. b, illus. 1 (2006), and/or under the indemnity clause in the Producer Agreement (Star having become ''involved'' in a ''claim, suit, hearing, action or proceeding'' giving rise to ''liabilit[y]'' ''by reason of [Brown] having performed services for [Star] under this Agreement''). However, Brown opposed summary judgment with competent proof that Star knew that the insured still had operations in California when it accepted the application and issued the policy—in other words, that Star knew what Brown knew about the applicant and chose to write the policy anyway. This was sufficient to create a genuine issue of material fact as to whether Star incurred contractual liability to the insured on its own and not ''by reason of'' Brown. See id. cmt. b (an agent's liability to a principal for unauthorized actions ''does not extend to loss that the principal could have avoided''). Star's different interpretation of the indemnity clause would lead to Brown being a reinsurer, not simply a producer, which is an unreasonable reading of the Producer Agreement as a whole. See 5 Margaret N. Kniffin, Corbin on Contracts § 24.22, at 240 (1998) (noting ''preference for an interpretation that will result in contract terms that are reasonable''). Using the fault-based rubric the parties persuade the majority to adopt, if this commercially extraordinary result was what the parties intended, they should have said so much more clearly than they did. Cf. Restatement (Third) of Torts: Apportionment of Liability § 22 cmt. f (2000) (''An in-

demnitee can recover contractual indemnity for his or her own legally culpable conduct only if the contract is clear on that point," but noting that, "[i]f the contract is otherwise clear, it need not contain specific words, such as 'negligence' or 'fault.'").

I thus concur in my colleagues' decision to reverse summary judgment and remand but for the reasons and on the limited issues outlined above.