PIONEER TITLE INSURANCE AND TRUST COM-
PANY, a Corporation, Appellant, *v.* W. W.
CANTRELL, Et Al, Respondents.

No. 3853

July 19, 1955.                               286 P.2d 261.

*J. W. Muir* of San Bernardino, California, and
*McNamee & McNamee,* of Las Vegas, for Appellant.

*Hawkins and Cannon,* of Las Vegas, for Respondents.

## OPINION

By the Court, MERRILL, C. J.:

This is an action upon a policy of title insurance. The sole question upon this appeal is whether the defect in title which was the basis of suit is one covered by the policy. The trial court ruled that it was and granted judgment against the insurance company in the sum of $6,000. Upon this appeal from that judgment the company contends that the defect is one which is expressly excepted from the terms of the policy. In our view its position is well taken and judgment must be reversed.

In 1922 a parcel of property located in Las Vegas was conveyed by H. J. Woodard as grantor to Mrs. A. D. Herman as grantee. The property conveyed, described by section divisions, was expressly limited by the following language, "less a strip of uniform width of 60 feet off the westerly side of said parcel of land for public highway."

Through intervening conveyances a portion of the property so conveyed reached the plaintiffs by deed in April, 1942. This portion is roughly triangular in shape. It abuts Fremont Street for a distance of 598 feet, its depth tapering from 297 feet on the east to 16 feet on the west. The 60-foot strip specified in the Woodard deed constitutes the extreme westerly tip of the triangle. The deed to plaintiffs made no mention of the strip or of any limitation with respect thereto.

On May 4, 1942 a policy of title insurance was issued by the defendant company to the plaintiffs upon the property so conveyed. In pertinent part the plaintiffs were insured against loss or damage which they "shall sustain * * * by reason of any defect in, or lien or encumbrance on said title, existing at the date hereof, not shown in Schedule B * * * which * * * [is] made a part of this policy." Schedule B provides in part, "Liens and encumbrances to which said title is subject, shown in the order of their priority, and defects and other matters to which said title is subject: * * * 3.

Subject to the reservation of a strip of land of uniform width of 60 feet off the westerly side of said parcel of land for public highway, as reserved in the deed from H. J. Woodard to Mrs. A. D. Herman, dated May 19, 1922 and recorded December 15, 1922 in Book 9 of Deeds, page 118, in the office of the County Recorder of Clark County, Nevada."

The effect of the language in the Woodard deed has been judicially determined. In 1943 a deed to the strip was given by Woodard. Subsequently an action to quiet title thereto was brought by the grantee's successor in interest against these plaintiffs. By court decree in January, 1952, it was determined that by the language of limitation in his deed Woodard had retained title to the strip. He had not conveyed it subject to an easement or use but had wholly excepted it from the conveyance.

Plaintiffs' position is that the policy of title insurance by its express language shows the entire piece of property to be vested in plaintiffs subject only to such matters as "liens and encumbrances" and "defects"; that as a matter of fact it was not vested in them; that the state of the plaintiffs' title to the strip was not that of being subject to correctable defects; that there was complete failure of title. The intent of the policy, however, is clear. As to the strip the company did not intend to insure against the language of limitation contained in the Woodard deed to which the policy expressly referred. This intent cannot be affected by any determination as to whether that language resulted, in a technical legal sense, in a lien, encumbrance, defect or "other matter" to which plaintiffs' title was subject.

In Caruso v. John Hancock Mutual Life Ins. Co., 136 N.J.L. 597, 57 A.2d 359, 360, 361, it is stated, "The authorities are in agreement as to the fundamental rules of construction, for a policy of insurance is simply a contract and its provisions should, of course, be construed as in any other contract. * * * It is not a proper function of the court to re-write or distort a contract under the guise of judicial construction. * * * 'The

law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce the contract as it is written.' " To the same effect are Evans v. Metropolitan Life Ins. Co., 26 Wash.2d 594, 174 P.2d 961; Shinn v. Family Reserve Ins. Co., 33 Ala.App. 281, 33 S.2d 741; Knouse v. Equitable Life Ins. Co. of Iowa, 163 Kan. 213, 181 P.2d 310.

Accepting that the company has, by Schedule B, provided an exception to its insurance as to the strip of land, plaintiffs contend that by the language of the policy the company has in effect represented and insured that the defect was in the nature of an easement for roadway purposes; that a complete failure of vesting was not covered by the exception and that the company under its policy is therefore liable for such failure of title. It would appear from the record that any plans which may have existed for use of the strip as a roadway have been abandoned and that it is now free from any such restriction as may previously have existed.

We are unable to concur with the plaintiffs in their contention. Save for substitution of the words "subject to a reservation of" for the word "less," the exception is phrased in the same language as the deed to which it refers. Whatever the significance of that language may be, it remains the same whether expressed in deed or in insurance policy. The company's choice of the word "reservation" as a denomination of the defect is not in itself determinative. In the article by Bigelow and Madden on Exception and Reservation of Easements, 38 Harvard Law Review, 180, 181, it is said: "Grantors before the time of Coke had used the word 'reserve' when the plain intent was to take out of the operation of the conveyance some part of the property which would otherwise have fallen within the description used in the conveyance. Here the subject-matter was, of course, proper for an exception, and the strictly accurate words would have been, according to Coke, 'exceptis, salvo,

*praeter,* and the like.' But in the case of such a misuse of the word 'reserve,' no harm is done, since no legal problem is presented except a problem of interpretation, or of determining intent, and the intent is usually quite plain. Accordingly the courts have interpreted the word 'reserve' to mean 'except,' when the subject-matter to which the word is directed is the proper subject-matter of an exception." In Brown v. Connecticut Fire Ins. Co., 52 Okla. 392, 153 P. 173, it is held that although the meaning of challenged words used by an insurer in a policy could have been better or more accurately expressed, this is not ground for disregarding the plain import of appropriate language.

It may be noted that the "reservation" as expressed in Schedule B was not of an easement, dedication, use or right of way; it was of the "strip of land" itself. Furthermore it was "as reserved" in a specified public document. In our view the proper interpretation of the expressed exception is that it purported to be only a paraphrase for purposes of identity of the defect to which it expressly referred; that it was not intended to constitute a representation or a binding expression or opinion as to the legal nature or extent of that defect. Certainly it could not be said reasonably to justify one, without inquiring further, in accepting or relying upon it as a clear and binding representation that the defect amounted only to an easement or like encumbrance.

Reversed and remanded with instructions that judgment be rendered in favor of the defendant. Costs to appellant.

Badt and Eather, JJ., concur.