LINCOLN WELDING WORKS, INC., APPELLANT, v. RICHARD RAMIREZ, DBA RICO PAVING & GRADING COMPANY, RESPONDENT.

No. 12361

June 29, 1982                                      647 P.2d 381

---

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE CAMERON BATJER, Nev. Const., art. 6, § 19; SCR 10.

[4]The Governor designated the Honorable Michael Fondi, Judge of the First Judicial District Court, to sit in the place of THE HONORABLE JOHN MOWBRAY, who was disqualified. Nev. Const., art. 6, § 4.

*Foley Brothers,* and *Paul D. Elcano, Jr.,* Las Vegas, for Appellant.

*Rose, Edwards, Hunt & Pearson,* and *Pat Fitzgibbons,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant Lincoln Welding Works sued respondent Rico Paving & Grading Company, seeking to recover for expenses incurred in repairing sheet-piling work, and for damages to a forklift rented by respondent from appellant. On cross-motions for summary judgment, the district court entered judgment in favor of respondent.

On June 2, 1977, respondent entered into a general contract with the Clark County Sanitation District to construct sewage lagoons near Mesquite, Nevada. Under the terms of the general contract, respondent was authorized to subcontract certain portions of the project.

Approximately June 17, 1977, appellant entered into a written subcontract with respondent, to drive sheet piling at the Mesquite construction site. Appellant completed the work on February 7, 1978, and was paid $54,162.00 by respondent.

On March 4 and 5, 1978, a flood occurred, causing extensive damage to a portion of the sheet piling work done by appellant. Shortly thereafter, respondent asked appellant to repair the damaged sheet piling. Operating under the assumption that it would be compensated for the additional work, appellant repaired the damages occasioned by the flood.

Upon completion of the repair work, appellant requested payment of $19,108.22. Respondent refused to compensate appellant for the work, claiming that the prime contract was incorporated by reference into the subcontract. Under the terms of the prime contract, the respondent claimed all subcontractors were obligated to bear the risk of loss until the project was formally accepted by the Sanitation District. The project was not formally accepted by the District until May 8, 1978.

Additionally, the parties entered into a bare rental agreement, wherein respondent rented a forklift from appellant for two and one-half weeks, at a cost of $835.90. Five months after respondent returned the forklift, appellant demanded payment of $1,862.40 for damages allegedly caused by respondent's misuse of the forklift.

Appellant first contends there was not an incorporation by reference because the subcontract did not specifically incorporate all the terms of the prime contract. The general rule regarding incorporation by reference can be stated as follows: "[W]ritings which are made a part of the contract by annexation or reference will be so construed; but where the reference to another writing is made for a particular and specified purpose, such other writing becomes a part for such specified purpose only." Orleans M. Co. v. Le Champ M. Co., 52 Nev. 92, 284 P. 307 (1930).

In the instant case, respondent claims that the prime contract was incorporated by reference pursuant to the following language:

> . . . the Sub-Contractor agrees to furnish at his own expense, all the labor and materials necessary to do and perform in a good and workmanlike manner all the necessary installation described as follows:
> WORK PER PLANS, SPECS., AND ADDEM, #1 DATED 12/2/77 DRIVING SHEET PILING
> $51,300.00
> . . . said work to be done and material furnished therefore in conformity with the plans and specifications for the same prepared by VTN NEVADA-CONSULATING ENGINEERS.

Respondent contends the general reference to the "plans and specifications," included in the prime contract, evidences the parties' intent to incorporate the prime contract by reference.

Where reference in a contract to "plans and specifications" indicates an intention to incorporate them generally, such reference becomes a part of the contract for all purposes. Moreover, if "the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though incorporated in the very contract itself." Valley Construction Co. v. City of Calistoga, 72 Cal.App.2d 839, 165 P.2d 521 (1946); see also, Trottier v. M. H. Golden Construction Co., 105 Cal.App.2d 511, 233 P.2d 675 (1951).

In the instant case, the parties' subcontract was a one-page, short-form document, which by its express terms, required appellant to furnish work in conformity with the plans and specifications of the prime contract. The record reflects appellant was acquainted with plans and specifications embodied in

the voluminous prime contract. In point of fact, appellant had to refer to the prime contract in order to formulate his bid.

Under the circumstances presented herein, we conclude that the parties intended to incorporate the prime contract into the subcontract.

A review of the pertinent provision of the subcontract, reflects that the risk of loss was to remain with the appellant until formal acceptance of the project by the Sanitation District. According to subsection two of the subcontract, appellant agreed "to do all work in a first-class and workmanlike manner and to the entire satisfaction of the owner, contractor, and architect." Subsection five of the agreement goes on to state, "to take proper care of all building materials on the ground." Additionally, section nine of the subcontract states, "Sub-Contractor hereby releases Rico Paving & Grading Co. of all liability on account of any accidents during performance of work in this contract." The final clause of the parties' agreement states, "the final payment of which the said Contractor will pay to the said Sub-Contractor, 30 days after final payment by owner provided the Sub-Contractor shall have completed his work to the full satisfaction of said contractor, owner and architect."

Generally, "one who contracts unqualifiedly to erect a structure for a stipulated price enters into an entire contract to complete such work and must bear the losses resulting from its accidental destruction or damage before completion, unless the contract stipulates that he will not be responsible for losses occurring in such manner." Mainland v. Alfred Brown Co., 85 Nev. 654, 461 P.2d 862 (1969); Collins v. Post, 227 Or. 229, 362 P.2d 325 (1961).

In the instant case, the subcontract, considered in its totality, suggests that the parties bargained with reference to the prime contract and with the expectation that appellant would bear the risk of loss to its work, until formal acceptance by the District. Additionally, the subcontract does not contain a risk shifting provision absolving appellant from bearing the risk of loss until the contract was completed to the satisfaction of the owner and architect.

In the factually similar case of Collins v. Post, 227 Or. 229, 362 P.2d 325 (1961), the general contractor in charge of building a state prison, subcontracted with plaintiff to build a steam tunnel. After completion of the tunnel, but before formal

acceptance of the project by the owner, the steam tunnel was badly damaged. The subcontractor repaired the damaged tunnel and sued the general contractor for payment. The court held that the subcontractor bore the risk of loss, and was liable for the reconstruction of the damaged tunnel.

Under the terms of the parties' agreement in *Collins,* the subcontractor was obligated to "save harmless" the contractor from damages due to the subcontractor's failure to fully perform. Pursuant to the terms of the prime contract, the general contractor was liable for damages to the project until formal acceptance by the owner. The court found that under the terms of the subcontract, as well as the prime contract, which was incorporated by reference, the subcontractor was liable for accidental damages to his work.

Here, as in Collins v. Post, *supra,* we conclude the provisions of the parties' agreement establish that the risk of loss was to remain with appellant until the project was formally accepted by the District.

Finally, appellant contends the district court erred in granting respondent's motion for summary judgment on the issue of damages to appellant's forklift.

Appellant contends that it delivered the forklift to respondents in good condition, and that the forklift was returned in disrepair. In its affidavit, appellant testified that after respondents returned the rented forklift, it discovered the forklift was seriously damaged. In support of its claim for damages, appellant introduced an invoice dated March 22, 1978, which states, "Repair forklift as needed on rental agreement #3280, amount $1,862.41."

The affidavit of Richard Ramirez, owner of Rico Paving & Grading Company, avers that "he was in no way responsible for any damage or negligent in any way which would result in the damages claimed by the Plaintiff."

In determining the propriety of a summary judgment order, all evidence favorable to the party against whom such judgment was rendered will be accepted as true. Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963); Potter v. Mutual Benefit Life Ins. Co., 93 Nev. 90, 560 P.2d 914 (1977). Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no genuine issues of fact remaining for trial. Bader Enterprises, Inc. v. Becker, 95 Nev. 807, 603 P.2d 268 (1979).

In Short v. Hotel Riviera, Inc., *supra,* this court noted, "a trial court should not pass upon the credibility of opposing

affidavits, unless the evidence tendered by them is too incredible to be accepted by reasonable minds.''

Here, the parties' affidavits are in direct conflict. There is nothing in the record to suggest appellant's factual allegations regarding the damaged forklift are too incredible to be accepted by reasonable minds.

Viewing the evidence in a light most favorable to appellant, we find a genuine issue of fact exists regarding the alleged damage to appellant's forklift.

Accordingly, that part of the district court's summary judgment order relating to the parties' construction contract is affirmed. That part of the summary judgment order which denies appellant's claim for damages pursuant to the parties' forklift rental agreement is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

GUNDERSON, C. J., MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, SR. J.,[1] concur.