AGRICULTURAL AVIATION ENGINEERING CO., A NEVADA CORPORATION, DBA AGRINAUTICS, APPEL-LANT, *v.* THE BOARD OF CLARK COUNTY COM-MISSIONERS, COUNTY OF CLARK, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, DEPART-MENT OF AVIATION, ROBERT N. BROADBENT, DIRECTOR, RESPONDENTS.

No. 20520

June 28, 1990

794 P.2d 710

*David Goldwater,* Las Vegas, for Appellant.

*Rex Bell,* District Attorney, *James L. Taylor,* Deputy District Attorney, Clark County, for Respondents.

# OPINION

*Per Curiam:*

This case involves a dispute over an exculpatory clause in a commercial lease between appellant-lessee Agricultural Aviation Engineering (Agrinautics) and respondent-lessor Board Clark County Commissioners (Clark County).

On May 1, 1973, Agrinautics entered into a twenty-year lease agreement with George and Janis Sanders for a warehouse "as is." In September 1980, the Sanders replaced the entire roof of the warehouse; however, the new roof leaked. Storms in 1981, 1983 and 1985 further damaged the new roof, until 1986, when it became clear that the roof was damaged beyond repair. As a result, Agrinautics suffered damages to its property in excess of $10,000.00.

On September 30, 1986, Clark County purchased the property from Janis Sanders.[1] On November 18, 1986, Agrinautics notified Clark County that the 1980 roof was not installed according to code. On September 10, 1987, Agrinautics filed a complaint against Clark County, alleging that Clark County was liable for its failure to replace the roof and for consequential damages to the business and property of Agrinautics. The district court granted Clark County's motion for summary judgment, finding that the exculpatory clause of paragraph 7 of the lease excused Clark County from any liability for damages. Agrinautics appealed.

On appeal, Agrinautics contends that the trial court erred in granting summary judgment to Clark County, because the exculpatory clause in the lease is ambiguous in its terms and in relation to the agreement as a whole. Therefore, there remains a genuine issue of disputed, material fact that requires reversal of the district court order. We agree.

Paragraphs 4 and 7 and the maintenance agreement are ambiguous. Paragraphs 4 and 7 of the lease provide:

> 4. Lessor shall be under no liability, obligation or expense whatsoever, *except the roof and walls,* in connection with the maintenance or the repair of the leased property, after turning over its possession, and any need for other repairs may be conclusively presumed to be caused by the lessee, who hereby covenants to turn the premises over at the end of

---

[1]George Sanders, president of Agrinautics, executed an "Assignment of Lease" on September 23, 1986, conveying all his right, title and interest in the lease to Janis Sanders. This assignment was made retroactive to May 3, 1974. Also, at approximately the same time, Clark County sued Agrinautics to condemn the leasehold under eminent domain, culminating in an order for occupancy of the premises on December 1, 1988.

the leased term in the same satisfactory conditions in which received, subject to the exceptions set forth in Paragraph 3 of this Lease.

7. Lessor shall not be liable for any loss or damage to property of Lessee or others on the leased premises, nor shall Lessor be liable for any damage or injury to any person or persons occurring upon said premises for any cause whatsoever, whether now existing, such risks being assumed by Lessee. In this regard Lessee agrees to hold Lessor harmless against any type of loss or damage to property or persons that may occur during the term of the Lease.

Lessor hereby releases and forever discharges Lessee, his heirs, executors, administrators and assigns of and from all manner of action and actions, cause and causes of action, judgments, executions, debts, dues, claims, and demand pertaining specifically to any claim Lessor might have against Lessee as a result of fire and/or explosion.

(Emphasis added.)

At the same time, the parties executed a "Maintenance Agreement" in which Agrinautics assumed "all obligations of maintenance and repair, as provided in Paragraph 4 of said lease." The agreement also provided that in consideration for Agrinautics' assumption of these further obligations, the Sanders agreed to pay Agrinautics $500.00 per month. One year later, on May 1, 1974, the parties amended six of the lease paragraphs not at issue here. On the one hand, paragraph 7 provides that the lessor shall be absolved from any liability. On the other hand, paragraph 4 indicates that the lessor would be absolved from liability except with respect to the roof and walls. In addition, the parties executed a maintenance agreement in which Agrinautics assumed all obligations of maintenance and repair. The lessor deducted $500.00 from the rent in consideration for Agrinautics assuming those obligations.

This lease is ambiguous because the paragraphs in question are reasonably susceptible to different constructions or interpretations. *See* Burbridge v. Howard University, 305 A.2d 245, 247 (D.C.App. 1973) (quoting 17A C.J.S. Contracts § 294 at 34-35 (1963)). One way to read the lease is that the lessor is absolved from any liability for the lessee's property except if the liability involved the walls or the roof. Another way to read the lease and the maintenance agreement is that because the lessee assumed all obligations pertaining to maintenance and repair, the lessor is absolved from any liability for maintenance and replacement of

the roof and walls. In Flyge v. Flynn, 63 Nev. 201, 239-240, 166 P.2d 539, 556 (1946), this court stated:

> In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is to be considered by the court and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms. In fact the courts will generally follow such practical interpretation of a doubtful contract. It is to be assumed that parties to a contract know best what was meant by its terms and are the least likely to be mistaken as to its intention . . . .

To resolve ambiguity, according to *Flynn,* the court should look to the intention of the parties to clarify the lease. Agrinautics provided an affidavit by George Sanders, the chief executive officer of Agrinautics and former owner of the "warehouse" at issue here. Sanders stated that the parties intended the lessor to replace the roofing when maintenance and repair by the lessee was no longer feasible. Sanders further stated that the Janis Sanders' replacement of the roof at her cost in September 1980 was in accordance with the terms of the lease. Janis Sanders subsequently repaired the roof on two occasions after the roof was damaged due to high winds. Although Sanders' affidavit appeared questionable because of his involvement with Agrinautics, courts have allowed such testimony, and stated that, to the extent resolution of the question turns on the credibility of the parties' testimony, this question should be referred to the trier of fact who observes the witnesses. *See* D. M. Development Co. v. Osburn, 621 P.2d 1186, 1191 (Or.App. 1980).

The Pennsylvania Superior Court addressed a situation similar to the instant case in Richard's 5 & 10 v. Brooks Harvey Realty INV, 399 A.2d 1103 (Pa.Supp., 1979). *Brooks* involved a lease for a store space, which stated that the lessor was obligated to keep the roof and the exterior walls of the store in proper repair, provided the lessee gave the lessor written notice that such repairs were needed. The lease also contained an exculpatory clause. When the roof began to leak, lessee gave the lessor the proper notice, but the lessor failed to repair the roof. *Id.* at 1104. The lessee brought an action against the lessor. The lessor claimed that he was immune from liability because of the exculpatory clause. The court in *Brooks* stated:

> It is settled that even though an exculpatory clause may be generally valid, additional standards must be met before it will be interpreted so as to relieve a person of liability that the law would otherwise impose. These standards are:
> (1) contracts providing for immunity from liability for

negligence must be construed strictly since they are not favorite of the law . . .; (2) such contracts must spell out the intention of the party with the greatest particularity . . . and show the intent to release from liability beyond doubt by express stipulation and no inference from the words of general import can establish it . . . (3) such contracts must be construed with every intendment against the party who seeks immunity from liability . . . (4) the burden to establish immunity from liability is upon the party who asserts such immunity . . . [Citation omitted] . . . .

*Id.* at 1105. In applying these standards, the *Brooks* court concluded that because the exculpatory language was ambiguous, the intentions of the parties controlled as to whether the lessor should be exonerated from damages.

We adopt the reasoning in *Brooks* and hold that the district court should have resolved the ambiguity of the lease by examining the intentions of the parties. To determine the parties' intentions, the credibility of their statements must be decided, which should be an issue for consideration by the trier of fact. *See Osburn, supra.* Therefore, the district court erred in concluding that there existed no genuine issue of material fact pertaining to the lease paragraphs. Accordingly, the district court's order is reversed, and this case is remanded for further proceedings.[2]

[2]THE HONORABLE ROBERT E. ROSE, Justice, voluntarily recused himself from participation in the decision of this appeal.