Nicholas S. SCAFFIDI, Plaintiff,

v.

UNITED NISSAN, a Nevada corporation; Nissan Motor Acceptance Corporation, a California corporation; and Does 1 through 20, inclusive, Defendants.

Nicholas C. Scaffidi, Plaintiff,

v.

United Nissan, a Nevada corporation; Nissan Motor Acceptance Corporation, a California corporation; and Does 1 through 20, inclusive, Defendants.

Forman Automotive, Inc., dba United Nissan, Third–Party Plaintiff,

v.

Nicholas S. Scaffidi, Third– Party Defendant.

No. CV–S–04–1366–PMP LRL.

United States District Court, D. Nevada.

Nov. 25, 2005.

Grenville T. Pridham, Law Office of Grenville Pridham, Las Vegas, NV, for Plaintiff.

Robert J. Caldwell, Ann L. Thomas, Kolesar & Leatham, Chtd., Jeffrey A. Bendavid, Moran & Associates, Las Vegas, NV, for Defendants.

## ORDER

PRO, Chief Judge.

Presently before this Court is Defendant Nissan Motor Acceptance Corporation's ("NMAC") Motion for Partial Summary Judgment as to Nissan Motor Acceptance Corporation's First Amended Counterclaim and Third–Party Complaint (Doc. # 77) filed July 5, 2005. NMAC filed a Notice of No Opposition by Plaintiff, Nicholas S. Scaffidi, to Motion for Partial Summary Judgment as to Nissan Motor Acceptance Corporation's First Amended Counterclaim (Doc. # 100) on August 5, 2005. Third Party Defendant Grenville Pridham filed Grenville Pridham's Brief in Opposition to Nissan Motor Acceptance Corporation's Motion for Summary Judgment and Countermotion to Strike Motion for Being Filed in Violation of FRCP 56(a) (Doc. ## 108, 109) on August 8, 2005.

## I. BACKGROUND

This case arises out of a contract dispute regarding Defendant United Nissan's sale of a used Chevrolet Camaro ("Camaro"), manufacturer's serial number 2G1FP32KX12113873, to Nicholas S. Scaffidi. (Three–Day Notice of Intent to Take Default [Doc. # 19], Ex. A.) On October 1, 2002, Nicholas S. Scaffidi bought the car from United Nissan ("Nissan") for $26,566.06. (Compl.; Three–Day Notice of Intent to Take Default, Ex. A.) Nicholas S. Scaffidi traded a 1995 Pontiac Trans Am ("Trans Am"), in exchange for a $5000 credit as part of the negotiated deal for the Camaro. (Three–Day Notice of Intent to Take Default, Ex. A.) Plaintiff Nicholas C. Scaffidi is Nicholas S. Scaffidi's father. Grenville Pridham ("Pridham") is Nicholas C. Scaffidi's father.

Plaintiffs' claims involve three separate issues. First, Plaintiffs allege Defendants sold the Camaro without disclosing major structural damage the car had sustained and that Defendants refused to honor the warranties covering the contract. (Compl. at 7–8.) Specifically, Plaintiffs allege that Defendants did not honor Nicholas S. Scaffidi's legal rescission of the contract. (Compl. at 7–8.) Second, Plaintiffs allege Defendants fraudulently conducted the credit application process and contract negotiation in connection with the sale of the Camaro. (*Id.* at 6–7.) Plaintiffs allege Defendants negligently and wilfully used the social security number of Nicholas C. Scaffidi, Nicholas S. Scaffidi's father, to sell the Camaro to Nicholas S. Scaffidi. (*Id.*) Additionally, Plaintiffs allege that Defendants manipulated the sales process to add additional, unapproved fees to the final sale price. (*Id.* at 7.)

Plaintiffs and Defendants offer significantly different versions of the transaction. Plaintiffs argue that a window placard, allegedly removed from the window of the Camaro, establishes that the Camaro was covered by a partial warranty. (Pl. Nicholas S. Scaffidi's Brief in Opp'n to Def. Nissan Motor Acceptance Corp.'s Mot. for Summ. J. ["Pl.'s Opp'n"], Ex. 4.) Specifically, the window placard, which appears to be titled "Buyers Guide," provides:

Limited Warranty. The dealer will pay 50% of the labor and 50% of the parts for the covered systems that fail during the warranty period.

(*Id.*) The window placard specifies the duration of the warranty as "1 month or 1000 miles." (*Id.*) NMAC offers a different buyers guide for the Camaro, VIN 2G1FP32KX12113873 (Nissan Motor Acceptance Corp.'s Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment ["NMAC's Mot. for Summ. J."], Ex. A at Ex. 2.) This Buyers Guide states that the Camaro is sold "AS IS—NO WARRANTY." (*Id.*) The Buyers Guide further states, "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." (*Id.*) The Simple Interest and Vehicle Contract between Nicholas S. Scaffidi and Nissan provides:

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulation may require a special buyer's guide to be displayed on the window.

(Three–Day Notice of Intent to Take Default, Ex. A.)

The parties provide two copies of an "After Sale Work Agreement," both signed by Nicholas S. Scaffidi. (Def./ Third–Party Pl. United Nissan's Mot. for Summ. J. of All Accounts Alleged by Nicholas S Scaffidi's Compl. or Alternatively a Mot. to Exclude Spoiled Evidence ["Def.'s Mot. Summ. J."], Ex. B.) The first copy, dated October 1, 2002, includes the typed statement, "SOLD AS IS OR AS

EQUIPPED—NOTHING ELSE PROMISED OR IMPLIED—PLEASE INITIAL," next to which Nicholas S. Scaffidi signed his initials. (*Id.*) That contract was not signed by a Nissan sales manager. (*Id.*) A second copy, which is undated, includes the handwritten statement, "SOLD AS IS—Nothing Else Promised or Implied." (*Id.*) Nicholas S. Scaffidi did not initial next to the handwritten statement. However, he did initial the agreement in five other places and placed his full signature at the bottom of the agreement. (*Id.*) Both copies include the following statement:

Any and all promises made to you, by any representative of United Nissan, must be in writing or will NOT be honored . . . .

(*Id.*)

With regard to the transaction, Nicholas S. Scaffidi alleges that Nissan—affirmatively misrepresented the car's actual price, and manipulated the credit process to trick Scaffidi into paying more for the car. (Compl. at 2–3.) Plaintiffs further allege that Nissan fraudulently used Nicholas C. Scaffidi's social security number to process the credit application. (*Id.* at 6–7.) Nissan contends that Nicholas S. Scaffidi fraudulently provided his father's social security number to buy the car. (Def.'s Mot. for Summ. J. at 25–26.)

Virginia Gunn ("Gunn"), a Senior Account Representative for Defendant Nissan Motor Acceptance Corporation ("NMAC"), states in a sworn affidavit that as part of the credit application process, Nicholas S. Scaffidi listed his social security number as XXX–XX–9451. (Nissan Motor Acceptance Corp.'s Mot. for Summ. J. or, in the Alternative, Mot. for Partial Summ. J. ["NMAC's Mot. for Partial Summ. J."], Ex. A, Ex. 2. at 2.) On October 2, 2005, NMAC approved Nicholas Scaffidi for financing. (*Id.* at 2–3.) Gunn states that on October 12, 2005, Nicholas S. Scaffidi informed NMAC that the social security number provided was Nicholas C. Scaffidi's social security number, yet it was Nicholas S. Scaffidi who signed the Camaro's sales contract. (*Id.* at 3.) As of the time of the affidavit, Gunn states that Nicholas S. Scaffidi has not paid any payments for the Camaro. (*Id.* at 4.) The amount due and owing on the Camaro is $29,733.94, as of June 17, 2005. (*Id.* at 5.) Gunn further states that "[p]rejudgment interest will continue to accrue at the rate of $6.18511859 per day until payment or entry of judgment, whichever event comes first." (*Id.*)

Immediately following the car purchase, Nissan assigned the loan to NMAC, making NMAC the creditor. (NMAC's Mot. for Summ. J., Ex. A.) Approximately three weeks after Nicholas S. Scaffidi signed the initial contract, Nicholas S. Scaffidi alleges Nissan called him and offered him a lower annual percentage rate on his car. (*Id.*) Nicholas S. Scaffidi allegedly returned to Nissan and signed a second contract, which also was assigned to NMAC. (*Id.*)

Within days of driving the car off the lot, Nicholas S. Scaffidi claims the car experienced significant mechanical problems, including wiring and brake issues. (*Id.*) Nicholas S. Scaffidi claims he took the car to Fairway Chevrolet, which informed him that the car had been in a major accident, had underwent significant mechanical and structural work, including the replacement of many parts, none of which would be covered under the manufacturer's warranty. Plaintiffs provide no evidence of this inspection. Nicholas S. Scaffidi claims he took the car back to Nissan for repairs. After getting the car back from Nissan, Nicholas S. Scaffidi allegedly continued to experience problems with the Camaro. Again, Plaintiffs provide no documentation regarding the alleged prob-

lems associated with the vehicle nor of Nissan's inspection.

On November 1, 2002, Nicholas S. Scaffidi sent a letter entitled "Demand for Return of Nicholas Scaffidi's Pontiac Trans Am." (Def. NMAC's Qualified Non–Opp'n to Attorney Grenville Pridham's Mot. to Withdraw as Attorney in Charge for Nicholas S. Scaffidi, Ex. A.) In the letter, Nicholas S. Scaffidi alleges the Camaro was in a prior undisclosed accident and was salvaged from a rental car company. (*Id.*) Troy Matthews ("Matthews"), Nissan's general sales manager, responded to Nicholas S. Scaffidi by letter on November 20, 2005. (*Id.*) Matthews informed Nicholas S. Scaffidi that in response to his letter, Nissan conducted a full history search of the vehicle which verified that the car's history did not show prior ownership as alleged by Plaintiffs. (*Id.*) Furthermore, Matthews informed Nicholas S. Scaffidi that following his request, Nissan had taken the Camaro to a third-party body shop which confirmed the Camaro did not suffer prior structural damage. (*Id.*) Neither party provides further evidence of this inspection.

Shortly thereafter, Nicholas S. Scaffidi was in a major accident involving the Camaro, resulting in a "total loss" as deemed by Progressive Insurance ("Progressive"). Progressive paid $16,275 to Scaffidi in reimbursement for the vehicle's loss. (Def.'s Mot. for Summ. J., Ex. D.) On April 18, 2003, Progressive issued a check payable jointly to Nicholas S. Scaffidi, Grenville Pridham, and NMAC. Progressive mailed the check to Pridham who deposited the check into his attorney trust account. On July 27, 2005, Pridham requested Wells Fargo return the $16,275 to Progressive, and notified Defense Attorney Robert J. Caldwell of his request. (Grenville Pridham's Brief in Opp'n to Nissan Motor Acceptance Corp.'s Mot. for Summ. J. and Countermot. to Strike Mot. for Being Filed in Violation of FRCP 56(a), Ex. 3.) In additional correspondence, Pridham authorized Wells Fargo to release the funds to Progressive immediately. (Grenville Pridham's Brief in Opp'n to Nissan Motor Acceptance Corp.'s Mot. for Summ. J. and Countermot. to Strike Mot. for Being Filed in Violation of FRCP 56(a), Ex. 4.) Contrary to the evidence Pridham presents, Nicholas S. Scaffidi admits that Pridham disbursed funds from the Progressive check to him. (Mot. for Partial Summ. J. as to Nissan Motor Acceptance Corp.'s First Am. Countercl. and Third–Party Compl., Ex. C. at 4.)

This is a consolidated action. Nicholas S. and Nicholas C. Scaffidi filed separate Complaints on October 1, 2004. On January 11, 2005, NMAC filed Nissan Motor and Acceptance Corporation's Answer and Counterclaim (Doc. ## 15, 16). In the original counterclaim, as to Nicholas S. Scaffidi, NMAC alleges breach of contract (claim 1), conversion (claim 2), fraud (claim 3), negligent misrepresentation (claim 4), unjust enrichment (claim 5), equitable indemnity (claim 6), contribution (claim 7), and apportionment (claim 8). NMAC did not name another defendant in its initial crossclaim. On July 5, 2005, NMAC filed Nissan Motor Acceptance Corporation's First Amended Counterclaim and Third–Party Complaint (Doc. ## 74, 75). NMAC alleges that Nicholas S. Scaffidi committed breach of contract (claim 1), conversion (claim 2), civil conspiracy (claim 3), fraud (claim 4), negligent misrepresentation (claim 5), unjust enrichment (claim 6), equitable indemnity (claim 7), contribution (claim 8), and apportionment (claim 9). As to Third–Party Defendant Pridham, NMAC alleges conversion (claim 1), civil conspiracy (claim 2), and unjust enrichment (claim 3).

On May 5, 2005, NMAC served Nissan Motor Acceptance Corporation's First Set

of Requests for Admissions to Nicholas S. Scaffidi and Nissan Motor Acceptance Corporations First Set of Requests for Admissions to Nicholas C. Scaffidi. (NMAC's Mot. for Summ. J., Ex C, D.) Neither Plaintiff responded to NMAC's request. Failure to answer a request for admissions deems the matter admitted under Federal Rule of Civil Procedure 36. Fed.R.Civ.P. 36; *O'Campo v. Hardisty,* 262 F.2d 621, 623 (9th Cir.1958); *see also Asea, Inc. v. S. Pac. Transp. Co.,* 669 F.2d 1242, 1245 (9th Cir.1981). Thus Plaintiffs admitted each statement in NMAC's request by failing to timely respond. *Id.*

On June 24, 2005, Plaintiffs moved to amend their admissions to NMAC's request. (Pls. Nicholas S. Scaffidi and Nicholas C. Scaffidi's Mot. for Leave to Amend its Answers to Def. Nissan Motor Acceptance Corp.'s Request for Admissions [Doc. # 68].) On July 20, 2005, the Honorable Lawrence R. Leavitt, Magistrate Judge for the United States District Court for the District of Nevada, denied Plaintiffs' motion to amend citing Federal Rules of Civil Procedure 16(b) and 36(b). (Order dated Jul. 20, 2005 [Doc. # 88].) Plaintiffs moved this Court to reconsider the Magistrate's July 20, 2005 Order and this Court denied Plaintiffs' motion.

Plaintiff Nicholas S. Scaffidi admits that he provided Nissan with his father's social security number when applying for credit to purchase the Camaro. (Nissan Motor Acceptance Corp.'s Mot. for Summ. J., or, in the Alternative, Mot. for Partial Summ. J., Ex C at 2.) Nicholas S. Scaffidi further admits that he has no valid cause of action under the Magnuson–Moss Warranty Act, the Truth in Lending Act, the Fair Credit Reporting Act, the Installment Sales Act, Nevada Revised Statute 482.26295, and the Nevada Deceptive Trade Practices Act. (*Id.* at 2–3.) Additionally, Nicholas S. Scaffidi admits that he has no valid cause of action for deceit, breach of implied warranty of merchantibility, breach of implied warranty of fitness for a particular use, fraud or misrepresentation, conversion, breach of obligation of good faith, or under any products liability theories. (*Id.*) Nicholas S. Scaffidi further admits that Progressive issued a check to him, Grenville Pridham, and NMAC jointly, which Pridham deposited in his trust account without Nicholas S. Scaffidi's endorsement, and then disbursed the funds to Nicholas S. Scaffidi. (*Id.* at 4.) Finally, Nicholas S. Scaffidi admits that he is not entitled to rescind the subject contract. (*Id.* at 2.)

Pridham moved to withdraw as counsel for Nicholas S. Scaffidi. On August 16, 2005, this Court held a hearing with regard to this matter, which Nicholas S. Scaffidi attended by telephone conference. (Minutes of the Ct. [Doc. # 113].) At that hearing this Court granted Pridham's motion to withdraw as Nicholas S. Scaffidi's counsel. This Court further held that Nicholas S. Scaffidi would have until September 19, 2005, to designate, in writing, new counsel of record, or, alternatively to advise the Court, in writing, that he is going to proceed in proper person. (*Id.* at 2.) As of the date of this Order, Nicholas S. Scaffidi has neither designated new counsel, nor has he informed this Court that he is going to proceed in proper person. This Court further ordered that Nicholas S. Scaffidi would have to November 1, 2005, to file a response to the present motion. (*Id.* at 3.) As of the date of this Order, Nicholas S. Scaffidi has not filed a Reply to NMAC's motion for partial summary judgment. Additionally, this Court impressed upon Mr. Scaffidi the importance of keeping in touch with counsel, and of providing correct contact information. (*Id.*) At the hearing, Nicholas S. Scaffidi provided the Court with the following address: 39011 Agua Vista, Unit # 5, Marietta, California 92563. (*Id.* at 2.) This Court attempted to mail to the Agua Vista ad-

dress which Nicholas S. Scaffidi provided and the mail was returned, marked "Moved Left No Address. Unable to Forward. Return to Sender." (Doc. ## 128, 129, 131.)

On July 5, 2005, NMAC filed its motion for partial summary judgment. (Mot. for Partial Summ. J. as to Nissan Motor Acceptance Corp.'s First Am. Countercl. and Third–Part Compl.) NMAC now moves this Court to grant partial summary judgment as to NMAC's first amended counterclaims and third-party complaint. Third Party Defendant Pridham responds to NMAC's motion, and moves this Court to strike NMAC's motion because it was filed in violation of Federal Rule of Civil Procedure 56(a).

## II. COUNTER MOTION TO STRIKE

Federal Rule of Civil Procedure 56(a) provides:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

Fed.R.Civ.P. 56(a). The United States Court of Appeals for the Ninth Circuit has held that a motion for summary judgment made less than twenty days after the commencement of an action is premature and procedurally "fatally defective." *Local 490, United Rubber, Cork, Linoleum and Plastic Workers of Am.v. Kirkhill Rubber Co.*, 367 F.2d 956, 958 (9th Cir.1966). Under the Federal Rules of Civil Procedure an action is deemed commenced at the time the complaint is filed. *Minetti v. Port of Seattle*, 152 F.3d 1113, 1114 (9th Cir.1998).

NMAC's cross-claim motion naming Nicholas S. Scaffidi as Defendant was filed January 11, 2005, over 120 days before NMAC moved for partial summary judgment on the claims, therefore with regard to Nicholas S. Scaffidi, NMAC's motion was compliant with Rule 56(a)'s requirements. However, NMAC amended its cross-claim, adding Pridham, on July 5, 2005, and filed its motion for partial summary judgment also on July 5, 2005. Because NMAC filed its amended cross-claim on the same day as its motion for partial summary judgment, less than 20 days after the commencement of the action against Grenville Pridham, NMAC's motion was premature and fatally defective procedurally. For this reason, the Court will deny NMAC's motion for partial summary judgment as to NMAC's claims against Grenville Pridham.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

NMAC argues it is entitled to summary judgment as to six of nine causes of action in its counterclaim against Nicholas S. Scaffidi: breach of contract (claim 1), conversion (claim 2), fraud (claim 4), negligent misrepresentation (claim 5), unjust enrichment (claim 6), and equitable indemnity (claim 7).

### A. Legal Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the

non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001).

## B. Discussion

### 1. Breach of Contract (claim 1)

 "The interpretation of contract where the facts are not in dispute is a question of law." *Shelton v. Shelton*, 119 Nev. 492, 78 P.3d 507, 510 (2003). The goal of contract interpretation is to give effect to the parties' mutual intentions. *Pioneer Title Ins. & Trust Co. v. Cantrell*, 71 Nev. 243, 286 P.2d 261, 263 (1955) (quoting *Caruso v. John Hancock Mut. Life Ins. Co.*, 136 N.J.L. 597, 57 A.2d 359, 360 (1948) ("The law will not make a better contract for the parties than they themselves have seen fit to enter into . . . .")). A document that is "clear on its face . . . will be construed from the written language and enforced as written." *Sandy Valley Assocs. v. Sky Ranch Estate Owners*, 117 Nev. 948, 35 P.3d 964, 967 (2001) (citing *Ellison v. C.S.A.A.*, 106 Nev. 601, 797 P.2d 975, 977 (1990)). A contract is ambiguous and, thus, unclear when it is "reasonably susceptible to different constructions and interpretations." *Agric. Aviation Eng'g Co. v. Clark County Bd. Comm'rs*, 106 Nev. 396, 794 P.2d 710, 712 (1990).

 In addition, Nevada follows the general rule that " 'writings which are made part of the contract by annexation or reference will be so construed; but where the reference to another document is made for a particular and specified purpose such a writing becomes a part for such specified purpose only.' " *Lincoln Welding Works v. Ramirez*, 98 Nev. 342, 647 P.2d 381, 383 (1982) (quoting *Orleans M. Co. v. Le Champ D' Co.*, 52 Nev. 92, 284 P. 307 (1930)). Finally, in Nevada "[f]actual disputes regarding breach of contract are questions for a jury to decide." *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 15 (Nev.2004).

NMAC argues Nicholas S. Scaffidi is in breach of the contract of sale for the Camaro for two reasons: 1) because he has failed to make a single payment for the Camaro; and 2) because he did not assign the proceeds from his property damage insurance claim to NMAC, the rightful recipient. As of June. 17, 2005, NMAC further alleges that it has been damaged in the amount of $29, 733.94 for the Camaro. For these reasons, NMAC argues that it is entitled to summary judgment as to its claim for breach of contract against Nicholas S. Scaffidi. Nicholas S. Scaffidi does not respond to NMAC's arguments, despite having been given by this Court an extension until November 1, 2005.

 Viewing all evidence in favor of Nicholas S. Scaffidi, the non-moving party, there is no question of material fact that Nicholas S. Scaffidi is not in breach of contract. The contract for sale between NMAC and Nicholas S. Scaffidi requires Nicholas S. Scaffidi make seventy-two monthly payments of $489.44 each, commencing on November 15, 2002. (NMAC's Mot. for Summ. J., Ex. A, Ex. 2. at 4.) Additionally, there is no question of material fact exists that Nicholas S. Scaffidi has never paid a scheduled payment to NMAC, or that Nicholas S. Scaffidi owes NMAC more than $29,733.94. (*Id.*) Nicholas S.

Scaffidi neither provides any evidence to the contrary, nor responds to NMAC's arguments. Because Nicholas S. Scaffidi has failed to perform his duty under the original vehicle purchase contract and NMAC has suffered damage as a result, this Court will grant NMAC's motion for summary judgment with regard to NMAC's claim for breach of contract against Nicholas S. Scaffidi.

### 2. Conversion (claim 2)

■ In Nevada,

[a] conversion is defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights. "Moreover, an act, to be a conversion, must be essentially tortious; a conversion imports an unlawful act, or an act which cannot be justified or excused in law."

*Wantz v. Redfield* 74 Nev. 196, 326 P.2d 413, 414 (1958) (quoting 53 Am.Jur. 819.) "An exercise of the rights of ownership sufficient to constitute conversion is present when a tortfeasor takes possession, sells the property, and pockets the proceeds of the sale." *Pelletier v. Pelletier*, 103 Nev. 408, 742 P.2d 1027, 1028 (1987) (citing *Wantz*, 326 P.2d at 414). "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. Whether a conversion has occurred is generally a question of fact for the jury." *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 5 P.3d 1043, 1048 (2000) (internal citations omitted). "Conversion does not require a manual taking. Where one makes an unjustified claim of title to personal property or asserts an unfounded lien to said property which causes actual interference with the owner's rights of possession, a conversion exists." *Bader v. Cerri*, 96 Nev. 352, 609 P.2d 314, 317 n. 1 (1980).

NMAC argues that it was the named payee on the Progressive insurance check, and therefore NMAC was contractually entitled to the entire amount paid by Progressive resulting from the property damage claim on the Camaro. NMAC argues Nicholas S. Scaffidi committed conversion by improperly keeping the Progressive check in defiance of NMAC's claim to the money. Nicholas S. Scaffidi does not respond to NMAC's argument. Additionally, Nicholas S. Scaffidi admits that Progressive issued a check to him, Grenville Pridham, and NMAC jointly which Pridham deposited in his trust account without Nicholas S. Scaffidi's endorsement. (Nissan Motor Acceptance Corp.'s Mot. for Summ. J., or, in the Alternative, Mot. for Partial Summ. J., Ex C at 4.) For these reasons, NMAC moves the court to grant summary judgment for his claim of conversion against Nicholas S. Scaffidi.

■ Viewing all evidence in favor of Nicholas S. Scaffidi, the non-moving party, substantial questions of material fact remain as to whether Nicholas S. Scaffidi is liable for conversion. Substantial questions of fact remain as to whether the funds were disbursed to Nicholas S. Scaffidi or returned to Progressive by Pridham. Nicholas S. Scaffidi admits that the funds were disbursed to him, in failing to respond to NMAC's requests for admission, however, Pridham has provided evidence that he authorized the funds to be released in full back to Progressive. Accordingly, this Court will deny NMAC's motion for summary judgment with regard to its claim for conversion (claim 2).

### 3. Fraud (claim 4)

■ In Nevada, to establish fraud a Plaintiff must establish the following elements: (1) the defendant made a false representation; (2) with the knowledge or belief that the representation was false (or

knowledge that it had an insufficient basis for making the representation); (3) and was made with the intention of inducing the party to act or refrain from acting upon the misrepresentation; (4) Plaintiff justifiably relied upon the misrepresentation; and (5) Plaintiff suffered damage as a result of the reliance. *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 89 P.3d 1009, 1018 (2004). The Nevada Supreme Court has "recognized that '[f]raud is never presumed; it must be clearly and satisfactorily proved.'" *Id.* (quoting *Havas v. Alger*, 85 Nev. 627, 461 P.2d 857, 860 (1969)).

NMAC argues there is no question of material fact that Nicholas S. Scaffidi improperly represented his father's Social Security Number as his own when applying for credit in conjunction with the sale of the Camaro, and therefore Nicholas S. Scaffidi is liable for fraud. Nicholas S. Scaffidi does not respond to Defendants argument. However, Nicholas S. Scaffidi admits that he provided Nissan with his father's social security number when he applied for credit to purchase the Camaro. (NMAC's Mot. for Summ. J., Ex C at 2.)

 Viewing all evidence in favor of Nicholas S. Scaffidi, the non-moving party, there are substantial questions of material fact as to whether Nicholas S. Scaffidi committed fraud. Nicholas S. Scaffidi admitted he provided NMAC with his father's social security number when he applied for personal credit for the purchase of the Camaro which he was to own. (*Id.*) Additionally, the limited facts presented indicate that as a result of the credit application, Nissan and NMAC approved a line of credit to Nicholas S. Scaffidi and supplied the car to him, for which Nicholas S. Scaffidi has not paid any money to either

Nissan or NMAC. (Nissan Motor Acceptance Corp.'s Mot. for Summ. J. or, in the Alternative, Mot. for Partial Summ. J., Ex. A, Ex. 2. at 2.) However, scienter is an element of the common law tort of fraud, and NMAC has not provided sufficient evidence that Nicholas S. Scaffidi intentionally provided his father's social security number with the further intention of inducing reliance by NMAC. Based on the limited evidence, a jury reasonably could determine that Nicholas S. Scaffidi did not intentionally or willfully provide his father's social security number. The Court will deny NMAC's motion for summary judgment with regard to NMAC's claim of fraud (claim 4) against Nicholas S. Scaffidi.

### 4. Negligent Misrepresentation (claim 5)

 Nevada follows the definition in Restatement (Second) of Torts § 552 for negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1387 (1998) (citing *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 94 Nev. 131, 575 P.2d 938, 940 (1978); Restatement (Second) of Torts § 552). Although the word "fraud" is not found anywhere in the Restatement definition—nor is the intent requirement that normally must accompany an allegation of common law fraud[1]—fraud is still an "es-

---

1. Scienter is an element of common law fraud. *See, e.g., Secretary of State v. Tretiak*, 117 Nev. 299, 22 P.3d 1134, 1140 ("[C]om-

mon law fraud requires proof of reliance and scienter ....") (Nev.2001) (distinguishing between common law fraud and state securities

sential element" of a negligent misrepresentation claim. *See Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003). The difference between fraud and negligent misrepresentation is that a negligent misrepresentation is made without a reasonable basis for believing its truthfulness. In Nevada, the tort of negligent misrepresentation is limited to business transactions. *Barmettler,* 956 P.2d at 1387.

NMAC alleges Nicholas S. Scaffidi negligently misrepresented his credit information by providing purposefully Nicholas C. Scaffidi's social security number on the credit application for the Camaro. Specifically, NMAC argues that Nicholas S. Scaffidi did not exercise reasonably care in applying for credit for the vehicle. NMAC now moves this Court to grant summary judgment as to its claim for negligent misrepresentation against Nicholas S. Scaffidi. Nicholas S. Scaffidi does not respond to NMAC's arguments. Despite having been given an extended time period to respond to NMAC's motion, Nicholas S. Scaffidi has failed to filed an Opposition to NMAC's motion.

 Viewing all evidence in favor of Nicholas S. Scaffidi, the non-moving party, there is no question of material fact that Nicholas S. Scaffidi is liable for negligent misrepresentation. Nicholas S. Scaffidi admitted he provided NMAC with his father's social security number when applying for personal credit for the purchase of the Camaro which he was to own. (NMAC's Mot. for Summ. J., Ex C at 2.) Thus, Nicholas S. Scaffidi provided false information in a transaction where an individual reasonably would be expected to provide correct information to determine the eligibility of credit, in a credit-based transaction. Nissan and NMAC justifiably relied on the information contained in credit application. For these reasons, the

fraud actions brought pursuant to Nevada

Court will grant NMAC's Motion for Summary Judgment as to their claim for negligent misrepresentation (claim 5) against Nicholas S. Scaffidi.

### 5. Unjust Enrichment (claim 6)

 In Nevada, "[t]he terms 'restitution' and 'unjust enrichment' are the modern counterparts of the doctrine of quasi-contract". *Unionamerica Mortgage & Equity Trust v. McDonald,* 97 Nev. 210, 626 P.2d 1272, 1273 (1981) (citing *Smith v. Smith,* 95 Idaho 477, 511 P.2d 294 (1973)). "The purpose of quasi-contractual relief is to do justice to the parties regardless of their intention." *Id.* (citing *Trollope v. Koerner,* 106 Ariz. 10, 470 P.2d 91 (1970)). A party is unjustly enriched when he or she has retained a benefit "which in equity and good conscience belongs to another." *Id.* (citing *L & A Drywall, Inc. v. Whitmore Constr. Co. Inc.,* 608 P.2d 626 (Utah 1980)). "In a case with a quantum meruit or unjust enrichment theory of recovery, the proper measure of damages is the 'reasonable value of [the] services.' " *Asphalt Prod. Corp. v. All Star Ready Mix, Inc.,* 111 Nev. 799, 898 P.2d 699, 701 (1995) (quoting *Flamingo Realty, Inc. v. Midwest Dev., Inc.,* 110 Nev. 984, 879 P.2d 69, 71 (1994)).

NMAC alleges Nicholas S. Scaffidi has not paid NMAC, or Nissan, any money for the purchase of the Camaro. (NMAC's Mot. for Summ. J., Ex. A, Ex. 2. at 2.) Therefore, NMAC argues that by retaining the Camaro while failing to pay NMAC, Nicholas S. Scaffidi has been unjustly enriched and NMAC is entitled to the reasonable value of its services, or the Camaro. Nicholas S. Scaffidi has not responded.

NMAC has never received any payments from Nicholas S. Scaffidi for the

Revised Statute 90.570(2) and 90570.(3)).

Camaro. (NMAC's Mot. for Summ. J., Ex. A, Ex. 2. at 4.) Additionally, Nicholas S. Scaffidi admits that Progressive issued a check payable to himself, Pridham, and NMAC, and that Pridham deposited the check in his own account without NMAC's permission, and disbursed the funds directly to Nicholas S. Scaffidi. (NMAC's Mot. for Summ. J., Ex C at 4.) Contrary to Nicholas S. Scaffidi's admission, Pridham provides evidence that although the check was deposited into Pridham's attorney account, the amount in the check was returned to Progressive. (Grenville Pridham's Brief in Opp'n to Nissan Motor Acceptance Corp.'s Mot. for Summ. J. and Countermot. to Strike Mot. for Being Filed in Violation of FRCP 56(a), Ex. 4.)

■ Viewing all evidence in favor of the non-moving party, there is no genuine issue of material fact that Nicholas S. Scaffidi has not been unjustly enriched in regards to the transaction involving the Camaro. Nicholas S. Scaffidi received the car, had use of the car until the car was destroyed in an accident, and has never paid a single car payment to his creditor, NMAC. In doing so, Nicholas S. Scaffidi has retained a benefit-which in equity and good conscience belongs to NMAC. This Court will grant NMAC's motion for summary judgment with regard to its claim of unjust enrichment (claim 6) against Nicholas S. Scaffidi.

### 6. Equitable Indemnity (claim 7)

■ In Nevada, "equitable indemnity is a judicially-created construct to avoid unjust enrichment." *Medallion Development, Inc. v. Converse Consultants*, 113 Nev. 27, 930 P.2d 115, 119 (1997) (citing *Piedmont Equip. Co. v. Eberhard Mfg.*, 99 Nev. 523, 665 P.2d 256, 259 (1983)). "[T]here is a clear distinction between contribution and indemnity: the former is an equitable sharing of liability while the latter is a complete shifting of liability to the party primarily responsible." *Id.* The Nevada Supreme Court has developed a line of cases with regard to equitable indemnity. *See Black & Decker (U.S.), Inc. v. Essex Group, Inc.*, 105 Nev.344, 775 P.2d 698 (1989); *see also Reid v. Royal Insurance Co.*, 80 Nev. 137, 390 P.2d 45 (1964). In *Black & Decker*, the Nevada Supreme Court held that "[w]hen one party is subject to liability, which, as between that party and another, the other should bear, the first party is entitled to full indemnity." 775 P.2d at 699. With regard to the burden the party seeking indemnity bears, the Nevada Supreme Court held, "[e]vidence of only 'passive negligence or strict liability' is insufficient to establish 'active wrongdoing' by a party seeking indemnity." *Id.* (citing *Piedmont Equip. Co. v. Eberhard Mfg.*, 99 Nev. 523, 665 P.2d 256, 259 (1983)). "As a general proposition the third-party practice device is not available in a case involving joint or concurrent tortfeasors having no legal relation to one another, and each owing a duty of care to the injured party." *Reid v. Royal Ins. Co.*, 80 Nev. 137, 390 P.2d 45, 47 (1964).

NMAC argues that Nicholas C. Scaffidi seeks damages from NMAC, all of which NMAC alleges were initiated and caused by Nicholas S. Scaffidi. Specifically, NMAC argues that Nicholas C. Scaffidi's allegations are based on the abuse of social security information, which was negligently provided to NMAC by Nicholas S. Scaffidi, and therefore NMAC should be indemnified for any amount it is required to pay Nicholas C. Scaffidi.

■ As a matter of law, NMAC is not entitled to equitable indemnity from Nicholas S. Scaffidi. In Nevada, evidence of only passive negligence is insufficient to establish primary liability by a party seeking indemnity. *Black & Decker*, 775 P.2d at 699. Additionally, "[i]n order for one tortfeasor to be in a position of secondary

responsibility vis-a-vis another tortfeasor, and thus be entitled to indemnification, there must be a preexisting legal relation between them, or some duty on the part of the primary tortfeasor to protect the secondary tortfeasor." *Id.* at 699–700. In this matter, there are substantial questions of material fact to establish a case of fraud. Although NMAC has demonstrated a case for negligent misrepresentation, which does not require scienter, there is no preexisting legal relationship or duty between Nicholas S. Scaffidi and NMAC, justifying a finding of indemnification. For these reasons, the Court will deny NMAC's motion for summary judgment with regard to their claim for equitable indemnity (claim 7).

## III. CONCLUSION

IT IS THEREFORE ORDERED that Nissan Motor Acceptance Corporation's Motion for Partial Summary Judgment as to Nissan Motor Acceptance Corporation's First Amended Counterclaim and Third–Party Complaint (Doc. # 77) is hereby GRANTED in part and DENIED in part. Nissan Motor Acceptance Corporation's motion is GRANTED as to its claims against Nicholas S. Scaffidi for breach of contract (claim 1), negligent misrepresentation (claim 5), and unjust enrichment (claim 6). Nissan Motor Acceptance Corporation's motion is DENIED as to their claims for conversion (claim 2), fraud (claim 4), and equitable indemnity (claim 7).

IT IS FURTHER ORDERED that NMAC's motion is DENIED as to all claims against Grenville Pridham.